NO. 12-00-00355-CR



IN THE COURT OF APPEALS



TWELFTH COURT OF APPEALS DISTRICT


 

TYLER, TEXAS




DOUGLAS FONTENOT,
§
 APPEAL FROM THE THIRD

APPELLANT


V.
§
 JUDICIAL DISTRICT COURT OF


THE STATE OF TEXAS,

APPELLEE
§
 ANDERSON COUNTY, TEXAS






 

 Appellant Douglas Fontenot appeals his conviction for assault of a public servant for which
he was sentenced to thirteen years in prison. (1) In three issues, Appellant argues that the evidence was
insufficient to support the conviction and refute his claim of self-defense and that the trial court erred
by excluding evidence of bias on the part of the complaining witness. We affirm.


Background

 On December 23, 1997, James McCormick was working as a correctional officer at the
Coffield Unit of the Institutional Division of the Texas Department of Criminal Justice where
Appellant was an inmate. Officer McCormick testified that he was working outside a certain control
picket (2) on that day when Appellant walked past him in a line of inmates. Officer McCormick, who
was wearing the distinctive uniform worn by all correctional officers in the Institutional Division,
observed that Appellant did not have his hands behind his back as required by unit policy at that
time. As Appellant walked by, Officer McCormick told Appellant to put his hands behind his back,
but Appellant did not comply and continued to walk away. Due to the noise level in the area, Officer
McCormick assumed that Appellant had not heard him. 

 Officer McCormick caught up to Appellant and "hollered" at him, asking Appellant "Where
do you live?" The officer testified that Appellant spun around with his hands up in an "assaultive
posture," yelling and screaming for the officer not to touch him and to get away from him. Officer
McCormick, who told the jury that he had not touched Appellant but had his hands down by his
sides, looked down the hall for a sergeant, and did not see one. When Officer McCormick turned
back to face Appellant, Appellant hit him in the face two times with his fist, causing the officer to
fall back against the wall. Officer McCormick said that when Appellant hit him, it split his lip and
caused him pain as well as dazing him. 

 The officer testified that as he stood up and tried to clear his muddled head, a sergeant came
running down the hall and ordered Appellant to get on the floor, but Appellant did not comply until
ordered again. Officer McCormick restrained Appellant on the floor until other officers who had
come to the scene handcuffed Appellant. According to Officer McCormick, the sergeant then
ordered him away from Appellant because standard operating procedure required that those involved
in an altercation be separated.

 Several correctional officers who were working at the Coffield Unit on the day of the offense
testified for the State. Officer Jennifer Mathews-McCormick, (3) testified that from her post inside the
control picket, she could not hear what was said between Officer McCormick and Appellant before
Appellant hit Officer McCormick twice. She said that she never saw Officer McCormick touch
Appellant except when he helped restrain Appellant on the floor. Officers Calvin Hanes and Jerald
Knowles, who helped restrain Appellant along with Officer McCormick after the assault, testified
that they saw Appellant hit Officer McCormick twice in the face. Neither officer saw Officer
McCormick grab or hit Appellant. Both Officers Hanes and Knowles testified that if an inmate
refused to comply with an order, the correctional officer should repeat the order. The officers
explained that if the inmate continued to refuse to comply, the officer could ask for the inmate's
name and I.D. number in order to file a disciplinary case against the inmate. Officers McCormick
and Mathews-McCormick also testified that asking for an inmate's name and I.D. number was
standard procedure. 

 Lieutenant Balden Polk, who was a sergeant at the Coffield Unit on the day of the offense,
heard Officer McCormick tell Appellant to stop as Appellant passed by the officer. The lieutenant
said that Appellant did not stop immediately, but stopped only after Officer McCormick had ordered
him to stop a second time. He told the jury that Officer McCormick's manner was not aggressive
as he approached Appellant but that Appellant, whose hands were beside his waist, became
"belligerent" toward the officer. Lieutenant Polk said that as Officer McCormick looked toward him
and called for him, Appellant hit the officer twice in the face. Lieutenant Polk stated that Officer
McCormick neither touched or grabbed Appellant before Appellant hit him. When more officers
arrived to restrain Appellant, Lieutenant Polk ordered Officer McCormick, who was helping restrain
Appellant, away from Appellant so that the confrontation would not escalate. Lieutenant Polk
testified that Officer McCormick did not choke Appellant. Following the incident, Lieutenant Polk
approached at least five inmates who had witnessed the incident about giving statements, but all
refused. 

 Lieutenant Polk testified that correctional officers are taught to keep a distance of six feet
between themselves and the inmates for safety purposes. He said that if time permitted, a
correctional officer could take several steps if an inmate refused to follow an order: call for a
supervisor, call for support from additional officers, or call for a video camera.

 Sergeant Karl Brown testified that when he got to the scene of the altercation, Officers Hanes
and Knowles were restraining Appellant on the floor as he resisted being handcuffed. Sergeant
Brown said that Appellant was not choked. He did not see Officer McCormick restraining
Appellant. Sergeant Brown, who took Appellant to the infirmary after the incident, told the jury that
Appellant did have an abrasion on his neck, but the abrasion did not require treatment. (4) 

 Major Eddie Baker, who performed a routine investigation into the incident, testified that
Officer McCormick had not violated any policies of the Institutional Division during the incident. 
Major Baker testified, as did Lieutenant Polk and Officers McCormick, Mathews-McCormick,
Hanes, and Knowles, that on the date of the offense, it was a policy at the Coffield Unit for inmates
to hold their hands behind their backs as they walked through the hallways. Therefore, Major Baker
told the jury that when Officer McCormick ordered Appellant to place his hands behind his back,
it was a lawful order.

 Major Baker testified that correctional officers are sometimes authorized to use physical force
against an inmate who refuses to obey an order, but, if time and circumstances permit, other methods
should be employed first. He said that ordinarily, force is not used against an inmate for refusing
to comply with an order, but the major stressed repeatedly that depending on the time frame and the
circumstances of an incident, there were exceptions to the general rule. Major Baker told the jury that
before resorting to using force against an inmate, a correctional officer might call for a supervisor,
call for additional officers, or call for a video camera.

 After the State rested, two Coffield Unit inmates who had witnessed the incident testified on
behalf of Appellant. Inmate Michael Black ("Black") testified that he heard Officer McCormick say
something to Appellant about his hands, but Appellant kept walking. He said he warned Appellant
that Officer McCormick, who was walking up behind Appellant with his fists "doubled up," was
about to grab him. Black recounted that Appellant turned around, Officer McCormick grabbed
Appellant by his shirt, and then Appellant hit Officer McCormick twice. Black said that when
Appellant was being restrained on the floor, Officer McCormick was choking him. Black said that
it was not a unit policy on the date of the offense for the inmates to walk with their hands behind
their backs. Black told the jury that he was disciplined for causing a disturbance when he attempted
to gave a statement to the correctional officers about the incident.

 Inmate Wilbert Mosely ("Mosely") testified that Officer McCormick was ordering all the
inmates who passed him to put their hands behind their backs. Mosely said that such was not a unit
policy, but he had his own hands behind his back that day because the correctional officers "[were]
going to mess with you if you [did]n't." Mosely said that Officer McCormick grabbed Appellant
by the shirt, and then Appellant and Officer McCormick "went to wrestling." Mosely told the jury
that Appellant and Officer McCormick were exchanging blows for a couple of minutes. Mosely said
that Lieutenant Polk asked him to give a statement about the incident, but he refused.

 Next, Appellant testified in his own behalf. Appellant said that on the date of the offense,
he was walking with his hands down by his sides because there was no written rule or policy
requiring inmates to walk with their hands behind their backs. Appellant saw Officer McCormick
standing in the hall, but did not hear the officer say anything to him. Three inmates who were in line
with Appellant warned him that an officer was walking up behind him, so Appellant turned to
"confront" the officer and found Officer McCormick. Appellant told the jury that Officer
McCormick said, "You are going to learn to stop when I tell you," and grabbed the front of
Appellant's shirt. At that point, because he was "in fear of [his] life and the reputation [Officer
McCormick was] known for," Appellant struck Officer McCormick twice in the face. 

 As soon as Appellant hit the officer, other officers came running toward him, ordering him
down on the floor, and he complied. Appellant testified that after he lay down on the floor, Officer
McCormick jumped on his back, pulled his shirt collar around his neck, and began to choke him.
Appellant explained he tried to turn over so that he could breathe, and that the other officers who
were trying to restrain him could have interpreted his actions as resistance to being handcuffed. 
Appellant said Lieutenant Polk pulled Officer McCormick off of him and ordered the officer away
from the scene. 

 Appellant testified that he had not meant to harm Officer McCormick but acted only to
protect himself. Appellant told the jury that Officer McCormick had a reputation as a "hardhead,"
and that when he hit the officer, Appellant was in fear of imminent harm.

 Appellant called Lloyd Jones, an investigator with the State Counsel for Offenders, as his
final witness. Investigator Jones testified that Lieutenant Polk told him he had ordered Officer
McCormick away from the scene of the incident because the officer attempted to use force against
Appellant as Appellant was being restrained on the floor.


Sufficiency of the Evidence In his first issue, Appellant contends that the evidence was insufficient to support his
conviction for the offense of assault of a public servant. Specifically, Appellant avers that the
evidence was insufficient to prove that Officer McCormick was lawfully discharging an official duty
when Appellant assaulted him. Because Appellant does not designate whether he complains of legal
or factual sufficiency of the evidence, we must address both.

Legal Sufficiency

 The standard of review for legal sufficiency of the evidence is whether, viewing the evidence
in the light most favorable to the jury's verdict, any rational trier of fact could have found the
essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307,
319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); Lacour v. State, 8 S.W.3d 670, 671 (Tex. Crim.
App. 2000). An appellate court should uphold the jury's verdict "unless it is found to be irrational
or unsupported by more than a mere modicum of evidence." Moreno v. State, 755 S.W.2d 866, 867
(Tex. Crim. App. 1988). All conflicts in the evidence should be resolved in favor of the verdict, and
every reasonable inference indulged. Faison v. State, 59 S.W.3d 230, 236 (Tex. App.- Tyler 2001,
pet. ref'd). The jury is the exclusive judge of the credibility of the witnesses and of the weight to be
given their testimony. Barnes v. State, 876 S.W.2d 316, 321 (Tex. Crim. App. 1994). Likewise,
reconciliation of conflicts in the evidence is within the exclusive province of the jury. Losada v.
State, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986). 

 A person commits the offense of assault of a public servant if he intentionally, knowingly,
or recklessly causes bodily injury to a person he knows is a public servant while the public servant
is lawfully discharging an official duty. Tex. Pen. Code Ann. § 22.01(a)(1) & (b)(1) (Vernon Supp.
2002). "Bodily injury" means "physical pain, illness, or any impairment of physical condition." 
Tex. Pen. Code Ann. § 1.07(a)(8) (Vernon 1994). A "public servant" is "a person elected, selected,
appointed, employed, or otherwise designated as ... an officer, employee, or agent of government." 
Tex. Pen. Code Ann. § 1.07(a)(41) (Vernon 1994). A correctional officer is a public servant. See
id. 

 Appellant does not dispute that Officer McCormick was a public servant at the time of the
offense. Appellant does not dispute that he did not have his hands behind his back when he passed
Officer McCormick. He does not dispute that he hit Officer McCormick twice in the face, splitting
his lip and causing him to fall back against a wall. Appellant disputes that Officer McCormick was
lawfully discharging an official duty when Appellant hit him because, he alleges, the officer used
unlawful force to obtain compliance with an order.

 As previously set out in detail above, Appellant and his witnesses offered a markedly
different version of the events immediately preceding the assault on Officer McCormick from the
State's version of events. However, we must reconcile those differences in favor of the jury's
verdict. Viewing the evidence in the light most favorable to the verdict, a rational jury could have
found beyond a reasonable doubt that Appellant committed the offense of assault of a public servant. 
The evidence showed that on the date of the offense, it was a policy at the Coffield Unit that all
inmates were to hold their hands behind their backs when they walked through the hallways;
therefore, Officer McCormick's order to Appellant to place his hands behind his back was a lawful
order. When Appellant failed to comply with his order, Officer McCormick followed Appellant and
ordered him to stop. Appellant turned to confront the officer, began shouting at him, and then hit
the officer twice in the face. Officer McCormick neither touched nor threatened Appellant before
Appellant struck him. Therefore, we hold that the evidence was legally sufficient to support the
conviction. 

Factual Sufficiency

 When reviewing the factual sufficiency of the evidence, we must ask whether a neutral
review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is
so obviously weak as to undermine confidence in the jury's determination, or the proof of guilt,
although adequate if taken alone, is greatly outweighed by contrary proof. Johnson v. State, 23
S.W.3d 1, 11 (Tex. Crim. App. 2000). We review the evidence weighed by the jury that tends to
prove the existence of the elemental fact in dispute and compare it with the evidence that tends to
disprove that fact. Jones v. State, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996). This review must
employ appropriate deference to prevent an appellate court from substituting its judgment for that
of the fact finder, and any evaluation should not substantially intrude upon the fact finder's role as
the sole judge of the weight and credibility to be given to the testimony of the witnesses. Jones, 944
S.W.2d at 648. 

 We limit our inquiry into the factual sufficiency of the evidence to prove that Officer
McCormick was lawfully discharging an official duty. There was conflicting evidence offered on
the issue of whether Officer McCormick was lawfully discharging an official duty when Appellant
assaulted him. Major Baker, Lieutenant Polk, and Officers McCormick, Mathews-McCormick,
Hanes, and Knowles, all testified that on the date of the offense, it was a policy at the Coffield Unit
for inmates to hold their hands behind their backs as they walked through the hallways. Major Baker
specifically told the jury that when Officer McCormick ordered Appellant to place his hands behind
his back, it was a lawful order. The three inmate witnesses, including Appellant, testified that there
was no policy requiring that they walk with their hands behind their backs, though inmate Mosely
admitted he placed his own hands behind his back as he walked down the hallway that day because
he knew the correctional officers expected him to do so. The jury, by its verdict, resolved the
conflict in the evidence against Appellant.

 Finding that the order was a lawful order, the jury next had to consider whether Officer
McCormick acted lawfully when Appellant did not obey the order. Officers McCormick, Mathews-McCormick, Hanes, and Knowles all testified that it was standard procedure for a correctional officer
to ask for the inmate's name and I.D. number in order to file a disciplinary case against the inmate,
thus explaining Officer McCormick's question to Appellant, "Where do you live?" There was
conflicting evidence about whether Officer McCormick grabbed Appellant before Appellant hit him. 
All of the correctional officers questioned about the use of force against an inmate for failure to
comply with an order agreed that other steps should be pursued first but only if time and
circumstances permitted. Officer McCormick testified that he had his hands by his sides and did not
touch Appellant, and none of the correctional officers who saw the assault saw Officer McCormick
touch Appellant before Appellant hit him. Appellant and the other inmate witnesses testified that
Officer McCormick grabbed Appellant's shirt before Appellant hit the officer. The jury apparently
resolved the conflict in the evidence against Appellant. Based upon our neutral review of the
evidence, we cannot say that the proof of guilt is either so obviously weak as to undermine
confidence in the jury's determination or greatly outweighed by contrary proof. We hold that the
evidence is factually sufficient to support the conviction. Accordingly, Appellant's first issue is
overruled.


Self Defense

 In his second issue, Appellant contends that the evidence was insufficient to refute his
contention that he was acting in self-defense.

 A person is justified in using force when and to the degree he reasonably believes the force
is immediately necessary to protect himself against the other's use or attempted use of unlawful
force. Hudson v. State, 956 S.W.2d 103, 104-05 (Tex. App.- Tyler 1997, no pet.); Tex. Pen. Code
Ann. § 9.31(a) (Vernon Supp.2002). The force used by a defendant must be reasonable as
contemplated from the defendant's point of view. Hudson, 956 S.W.2d at 105. However, the use
of force against another is not justified in response to verbal provocation alone. State v. Morales,
844 S.W.2d 885, 891 (Tex. App.- Austin 1992, no pet.); Tex. Pen. Code Ann. § 9.31(b). 

 Self-defense is an issue of fact to be determined by the jury. Saxton v. State, 804 S.W.2d
910, 913 (Tex. Crim. App. 1991). The State has the burden of persuasion in disproving any evidence
of self-defense, but not a burden of production which requires the State to affirmatively refute the
self-defense claim. Id. Therefore, in reviewing the sufficiency of the evidence supporting a
conviction where a claim of self-defense was raised, we do not look to whether the State presented
evidence which refuted the self-defense theory, but rather we determine whether after viewing all
the evidence in the light most favorable to the prosecution, any rational trier of fact could have found
the essential elements of the offense beyond a reasonable doubt and also would have found against
Appellant on the self-defense theory beyond a reasonable doubt. Id. at 914. The standard of review
with respect to a self-defense claim, applies to both legal and factual sufficiency reviews. See Juarez
v. State, 961 S.W.2d 378, 385 n.5 (Tex. App.- Houston[1st Dist.] 1997, pet. ref'd).

 It is undisputed that Officer McCormick did not hit Appellant first. Viewing the evidence
in the light most favorable to the verdict, it is apparent that the jury resolved the issue of whether the
officer grabbed the front of Appellant's shirt before the assault against Appellant. Therefore, we are
left to consider whether the State met its burden of persuasion as to the two remaining theories of
self-defense upon which Appellant produced evidence. First, Appellant testified that because of
Officer McCormick's reputation as a "hard head," Appellant feared for his life when Officer
McCormick told him that he was going to learn to do what the officer ordered. Because the use of
force is not justified in response to verbal provocation alone, the State met its burden of persuasion
on this theory of self-defense as a matter of law. Next, Appellant testified that Officer McCormick
used physical force against him by choking him when he was being restrained on the floor. 
However, the alleged choking occurred after the assault, and, thus, would not justify self-defense as
a defense to the charged assault as a matter of law. We hold that the evidence is not only legally and
factually sufficient to show the essential elements of assault of a public servant beyond a reasonable
doubt but also legally and factually sufficient to disprove the issue of self-defense beyond a
reasonable doubt. Appellant's second issue is overruled. 


Excluded Evidence and Appellant's Right to Confrontation

 In his third issue, Appellant contends that the trial court erred by excluding evidence of bias
or motive on the part of the complaining witness. Additionally, Appellant argues the evidence
should have been admitted to correct a false impression left by Officer McCormick's testimony. 

 We review a trial court's decision to admit or exclude evidence under an abuse of discretion
standard. Weatherred v. State, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). We will not reverse
a trial court as long as its ruling was within the "zone of reasonable disagreement." Id. Error may
not be predicated upon a ruling which excludes evidence unless a substantial right of a party is
affected and the substance of the evidence was made known to the court by offer of proof or was
apparent from the context within which questions were asked. Tex. R. Evid. 103(a); Tex. R. App.
P. 44.2(b); Warner v. State, 969 S.W.2d 1, 2 (Tex. Crim. App. 1998).

 During counsel's cross-examination of Officer McCormick, the following colloquy occurred:


 Q. And you are saying you didn't do anything to provoke this?

 A. No, ma'am.

 Q. That you didn't strike him?

 A. No, ma'am.

 Q. And you wouldn't do that; is that what you would have the jury believe?


[State's objection omitted.]


 Q. Now...are you trying to leave the jury with the false impression you would not do that? You would not
provoke-

 A. No, I wouldn't.

 Q. -or strike an offender; is that what you are saying?

 A. Not in an unprovoked attack, no, ma'am.

 Q. Okay. Well, haven't you been put on probation just for that, for provoking and striking an offender?

 The prosecutor: Your Honor, I am going to object as being relevant to this case.

 The court: Sustained.

 Appellant's counsel: Your Honor, may we approach?

 The court: No, you may not. Continue with the questioning. 


 At the conclusion of the day's evidence, counsel put on the following bill of exceptions
without any further explanation: 

 Q. Mr. McCormick, I wanted to just ask you that if-is it true that you have received a disciplinary action from
T.D.C.J. for striking an offender without justification? Is that true?

 A. Yes, ma'am, that's the way the investigation turned out.

 Q. Okay. And is it also -was part of it true in the allegations that you failed to accurately report that use of
force?

 A. Yes, ma'am.

 Q. And this -the time frame is approximately April of 1999?

 A. Yes, ma'am.

 Q. And you received six months probation for this?

 A. Yes, ma'am.

 Q. Okay.

 The court: Is that all? That concludes the bill?

 Appellant's counsel: Your Honor, that concludes my bill.

 The court: All right. I still sustain the objection.


 The trial court excluded the evidence based upon the State's relevance objection. At no time
did counsel explain to the trial court that she was proffering the evidence to show bias, to correct a
false impression, or for any specific purpose. Ordinarily, if a party's trial objection does not comport
with the issue raised on appeal, he has preserved nothing for review. Tex. R. App. P. 33.1(a); Ibarra
v. State, 11 S.W.3d 189, 197 (Tex. Crim. App. 1999). However, even assuming, without deciding,
that Appellant's complaint was clear to the trial court from the context in which the questions arose,
and, thus, that Appellant has preserved his issue for appeal, we conclude his argument is without
merit. 

 Appellant specifically complains that the trial court erroneously limited his right to cross-examination of the complaining witness in violation of his Sixth Amendment right to confrontation. 
The Constitutional right to confrontation is a substantial right. The right to confront one's accuser
necessarily includes the right to cross-examine. Carroll v. State, 916 S.W.2d 494, 497 (Tex. Crim.
App. 1996). The Constitutional right of confrontation is violated when appropriate
cross-examination is limited. Id. Nevertheless, there are several areas where cross-examination may
be inappropriate and, in those situations, the trial judge has the discretion to limit cross-examination. 
Id. at 498. Specifically, a trial judge may limit cross-examination when a subject is exhausted, or
when the cross-examination is designed to annoy, harass, or humiliate, or when the cross-
examination might endanger the personal safety of the witness. Id. Although a defendant is allowed
great latitude in showing a witness's bias or motive to falsify testimony, the trial courts have
considerable discretion as to how and when bias may be proved and what collateral evidence is
material for that purpose. Cloud v. State, 567 S.W.2d 801, 802 (Tex. Crim. App. [Panel Op.] 1978).
Generally, a party cannot impeach a witness on a collateral matter. Ramirez v. State, 802 S.W.2d
674, 675 (Tex. Crim. App. 1990). A matter is collateral when the cross-examining party would not
be entitled to prove it as a part of his case tending to establish his plea. Id. However, a party may
impeach a witness with a collateral matter when that witness leaves a false impression on direct
examination concerning a matter relating to his credibility. See id. at 676 (emphasis added);
Sherman v. State, 20 S.W.3d 96, 101 (Tex. App.- Texarkana 2000, no pet.). On the other hand,
when a witness is cross-examined on a collateral matter, the cross-examining party may not then
contradict the witness' answer. Shipman v. State, 604 S.W.2d 182, 183 (Tex. Crim. App. [Panel
Op.] 1980). In other words, the cross-examining party may not impeach a witness during
cross-examination on a collateral issue. See id. 

 First, we note that the fact that Officer McCormick was disciplined for using force against
another inmate over one year after Appellant assaulted him is a collateral matter by definition. 
Appellant would not be able to prove it up as part of his defense. Secondly, it is far from clear that
the testimony elicited from Officer McCormick for the bill of exceptions would have shown bias. 
On cross-examination, counsel asked the officer if he was put on probation for "provoking and
striking" another inmate. The testimony on the bill showed only that Officer McCormick was placed
on probation for striking an offender without "justification" and failing to report it correctly. This
testimony did not literally contradict the officer's testimony on cross-examination. Furthermore, the
testimony on the bill showed that the officer did not believe he was not justified in using force
against the other inmate. Finally, Appellant himself created the "false impression" during his cross-examination of Officer McCormick. Therefore, he should not have been allowed to impeach the
officer with testimony relating to a collateral matter. We hold that the trial court did not abuse its
discretion by limiting Appellant's cross-examination of Officer McCormick. Appellant's third issue
is overruled. 

 The judgment is affirmed. 

 LEONARD DAVIS 

 Chief Justice

Opinion delivered March 20, 2002.

Panel consisted of Davis, C.J., Worthen, J., and Griffith, J.







(DO NOT PUBLISH)
1. Appellant pleaded true to one enhancement paragraph alleging a prior felony conviction thereby making
the instant offense punishable as a felony of the second degree.
2. A control picket is an enclosed area housing the controls which allow the guards to open and close the
gates to various hallways and cell blocks.
3. Officer Mathews-McCormick was married to Officer McCormick at the time of the trial but not at the time
of the offense.
4. A video tape introduced by Appellant purportedly shows a nurse in the prison infirmary swabbing at
Appellant's neck. The video tape is not part of the record on appeal because Appellant failed to make a motion that
it be filed by the clerk of this court.