Anthony L. HUDSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 12–96–00062–CR.

Court of Appeals of Texas,
Tyler.

Aug. 26, 1997.

Debbie S. Holmes, Huntsville, for appellant.

Gina M. DeBottis, Huntsville, for appellee.

Before RAMEY, C.J., and HOLCOMB and HADDEN, JJ.

HOLCOMB, Justice.

Anthony Louis Hudson ("Appellant") appeals his jury conviction for aggravated assault against a correctional officer, for which he was assessed a punishment of thirty (30) years imprisonment. Appellant complains that the trial court erred in refusing an instruction on self-defense and in denying his *Batson* challenge. We will affirm.

■ When properly requested, a defendant is entitled to a charge on every defensive theory raised by the evidence, regardless of the strength of the evidence or whether it is controverted. *Hayes v. State*, 728 S.W.2d 804, 807 (Tex.Cr.App.1987). If the testimony or other evidence, when viewed in a light most favorable to the accused, does not establish a case of self-de-

fense, an instruction is not required. *Preston v. State*, 756 S.W.2d 22, 24 (Tex.App.— Houston [14th Dist.] 1988, pet. ref'd).

Appellant was an inmate in the Eastham Unit of the Texas Department of Criminal Justice—Institutional Division. He was charged with assaulting Howard Moses ("Moses"), a correctional officer at Eastham. Appellant contends that various inferences can be made which raise the issue of self-defense. We must therefore review the record, which reflects the following:

On June 16, 1993, Moses and another guard ("Knievel") approached Appellant's cell and asked him if he wished to shower. Appellant stated that he did. Appellant had used his socks in such a way as to keep the food slot door open, making it impossible to open the cell door. Appellant removed the socks and Moses told Appellant to turn his back to the cell door, where he handcuffed the inmate through the food slot. Both Moses and Knievel testified that between the handcuffing and the time that the cell door opened, Appellant had somehow gotten his arms in front of him. When Moses started into the cell, Appellant swung at and hit Moses in the face with his handcuffed fists. Moses testified that Appellant then grabbed his collar and pulled him into the cell. They fought, with Moses hitting Appellant several times in the face. Knievel hit Appellant twice in the stomach. At some point, Appellant grabbed Knievel's riot stick and started swinging it at the two correctional officers. Another officer came into the cell and grabbed the stick from Appellant. Appellant was finally subdued, put on a gurney, and taken to the prison clinic. Moses and Knievel also received treatment at the clinic. It was undisputed that Appellant's injuries were more severe than those suffered by Moses.

Upon cross-examination, both Knievel and another prison guard testified that sometimes inmates tied the food slot open because they were afraid someone might enter their cell and hurt them. Appellant did not testify as to his version of the event.

■ A person is justified in using force when and to the degree *he reasonably be-*

*lieves* the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force. *Reed v. State,* 703 S.W.2d 380, 384 (Tex.App.—Dallas 1986, pet. ref'd) (emphasis in original); TEX.PENAL CODE ANN. § 9.31(a) (Vernon Supp.1995). The force used by a defendant must be reasonable as contemplated from the defendant's point of view. *Reed,* 703 S.W.2d at 384. If the accused, by his own testimony or by other evidence, raises the issue of self-defense, he is entitled to an instruction and charge *so long as* such evidence shows the complainant, by words or acts, caused the accused to reasonably believe he was in danger and to reasonably believe force was immediately necessary. *Preston,* 756 S.W.2d at 24–25 (emphasis in original). The mere fact that the accused "believed" the complainant might in some manner attack the accused, without evidence of any overt act or words that would lead the accused to reasonably believe he was in danger, is insufficient to give rise to a right to a charge and instruction on self-defense. *Id.* at 25. In order to submit a self-defense issue to the jury, there must be some evidence relating to Appellant's state of mind at the time of the alleged act of self-defense. *Reed,* 703 S.W.2d at 384.

█ In the instant case, Appellant offered no evidence of his state of mind necessary to raise the self-defense issue. There was no evidence that Appellant was afraid of Moses, or that he reasonably believed he was in danger. He acquiesced when Moses asked him if he wished to shower. He untied the socks so that the cell door could be opened. There is no evidence that Moses, by either words or acts, caused Appellant to reasonably believe force was immediately necessary to defend himself. We conclude, therefore, that the trial court did not err when it refused Appellant's request for an instruction on self-defense. Point of error one is overruled.

█ In his second point of error, Appellant contends that the State exercised a peremptory challenge against venireperson Anthony Reed ("Reed") in violation of federal and state law. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); TEX.CODE CRIM.PROC.ANN. art. 35.261 (Ver-

non Supp.1996). At the conclusion of voir dire, Appellant objected to the State's use of a peremptory challenge against Reed as racially motivated. The trial court then conducted a *Batson* hearing in which the District Attorney testified as to her reason for exercising a peremptory challenge on Reed. The trial court found the State did not exercise the peremptory challenge on the basis of Reed's race, and therefore denied Appellant's request that Reed be returned to the jury panel, or in the alternative, to dismiss the array and call a new venire panel.

█ We review the record of the *Batson* hearing and the voir dire examination in the light most favorable to the trial court's ruling. *Cantu v. State,* 842 S.W.2d 667, 689 (Tex.Cr.App.1992). We will not disturb a trial court's ruling on a *Batson* issue unless it is clearly erroneous. *Id.; Harris v. State,* 827 S.W.2d 949, 955 (Tex.Cr.App.1992).

A review of voir dire examination reveals that venireperson Reed answered affirmatively that he had visited a prison unit in response to a general question to the whole venire. No specific questions were put to Reed by either party. At the *Batson* hearing, without the court specifically ruling that Appellant had established a *prima facie* case, the District Attorney testified that she recommended striking Reed because she had had an altercation with him, and that she was afraid he would hold it against the State. Reed worked in the basement of the courthouse as an extension agent. He purportedly spent too much time in the D.A.'s office talking to the employees, and the D.A. told him that "he needed to leave [her] office or [she] was going to throw him down the stairs."

Appellant cross-examined the D.A., presumably to invalidate the grounds enunciated by the State. Appellant questioned the D.A. about a caucasian venireperson ("Kendrick") who indicated that he had some issues with the State in regards to the prosecution of one of his relatives. Kendrick was not excused by the State. Appellant pointed out that the State did not question Reed to discover if he was actually biased, but did question Kendrick. The D.A., however, testified that she

believed Kendrick *had* been excused, and seemed surprised to find that he had not. Furthermore, she stated that there were several people on the panel whom she probably had offended in the past, and she did not bring them to the bench either. The D.A. asserted that it was not her practice to do so. After the D.A.'s testimony, Appellant argued that the disparate treatment of Reed and Kendrick proved that the State's race-neutral explanation was pretextual.

Because the State proffered a reason for its peremptory challenge to venireperson Reed, and the trial court ruled on the issue of purposeful racial discrimination, we need not address whether Appellant established a *prima facie* case, which is normally the first step in a *Batson* analysis. *Hernandez v. New York,* 500 U.S. 352, 359, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991); *Hill v. State,* 827 S.W.2d 860, 865 (Tex.Cr.App.), *cert. denied,* 506 U.S. 905, 113 S.Ct. 297, 121 L.Ed.2d 221 (1992). The next step requires the State to present a racially-neutral explanation for the peremptory challenge. *Purkett v. Elem,* 514 U.S. 765, 768, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995). This step in the process "does not demand an explanation that is persuasive, or even plausible," but simply facially neutral. *Id.* In the third step, Appellant has the burden of persuasion that the State's reason was a pretext for purposeful racial discrimination. *Lewis v. State,* 815 S.W.2d 560, 563–64 (Tex.Cr.App. 1991), *cert. denied,* 503 U.S. 920, 112 S.Ct. 1296, 117 L.Ed.2d 519 (1992); Tex.Code Crim.Proc.Ann. art. 35.261(a). In order to overturn the trial court's finding of no racial motive, there must be support in the record to do so. *Purkett,* 514 U.S. at 767–72, 115 S.Ct. at 1771–72. This court cannot simply hold that the State's reason for the peremptory strike is "unreasonable." *Id.*

 Because the D.A. testified that Reed was excused for a race-neutral reason, and because she further stated that he was not the only person she did not call to the bench to question about possible bias, there was no disparate treatment *per se.* Furthermore, if the State did, in fact, treat Reed differently from Kendrick, disparate treatment should not "automatically be imputed ... where one

of the State's reasons for striking a venireperson would technically apply to another venireperson whom the State found acceptable." *Pondexter v. State,* 942 S.W.2d 577, 582 (Tex.Cr.App.1996) (cite omitted). In other words, Appellant still had the burden of showing that the disparate treatment was racially motivated. In the instant case, Appellant failed to do so. After reviewing the record under the applicable standards, we conclude that the trial court's ruling was not clearly erroneous. Point of error two is overruled.

We affirm.