NO. 12-01-00155-CR



IN THE COURT OF APPEALS
 


TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS


ARTHUR GEORGE BECKMAN,
§
 APPEAL FROM THE EIGHTH

APPELLANT


V.
§
 JUDICIAL DISTRICT COURT OF


THE STATE OF TEXAS,

APPELLEE
§
 RAINS COUNTY, TEXAS

 

 Appellant Arthur George Beckman appeals his conviction for the offense of murder for
which he was sentenced to life in prison. Appellant presents three issues for our consideration. We
affirm.


Background


 In the late summer of 2000, Appellant was the manager of the Lake Fork Mobile Home and
RV park in Rains County where Steven Compton ("Compton") was a resident. In the early morning
hours of Saturday, August 26, 2000, Compton's dead body was discovered lying supine on the
ground in front of his trailer. Compton had been shot twice with a shotgun: once in the neck and
once in the head. Compton's dog had also been shot. (1)

 About a month later, a shotgun was recovered from a small pond adjacent to Appellant's
trailer. Appellant was brought in for questioning and eventually confessed to shooting Compton.



Self-Defense

 In his first issue, Appellant contends that the trial court erred by refusing to include an
instruction on self-defense in the jury charge. Appellant did not testify at trial, but the State
introduced Appellant's confession into evidence during its case-in-chief. Appellant asserts that his
statement raised the issue of self-defense. 

 In his written confession, Appellant stated that on August 25, 2000, at about 11:40 p.m., he
and his wife were in the living room of their trailer when they heard a car enter the R.V. park driving
"way to [sic] fast." Appellant saw that the car was driven by Compton. Appellant wrote: (2)


 We had talked before about him speeding in the park and we argued about to the point of becoming
phyisacal [sic]. As I was walking up to the trailor [sic] I could hear him screaming and ponding (sic)
on the walls of his trailor [sic]. I yelled out to him (Steve) to stop making so much noise, and what
was he doing going so fast in the park. He (Steve) came out of the trailor [sic] and said, you are not
going to run me out of this park even with an army behind you. End quote. I then told him that he was
not going to be that way and that he (Steve) would have to leave tommorrow [sic]. Steve then came
off the porch towards me yelling, I'm going to whoop [sic] your ass, I then back up and told him that
he was not going to hurt me, I then went to my house and got my shotgun to make him leave. 



 According to his statement, Appellant then went back to his own trailer, told his wife that
he was going to make Compton leave the park, and retrieved his shotgun and a shotgun shell from
his closet. Appellant's wife urged him not to take the gun with him, and Appellant told her not to
worry because he wasn't going to shoot Compton. Appellant's statement continued:


 I went to Steve's trailor [sic] and he was still in an [sic] rage. He (Steve) saw me coming over and
stepped off the porch and came at me. He (Steve) was moving faster than I expected and caught me
off guard. He (Steve) grab at me and we struggeled [sic] for a minute, I told him to let go and that we
would talk this over. We struggeled [sic] for a little bit longer when the gun went off. It startled us
(Steve and I) to the point that we stopped because we heard the dog yelped. I got away from his [sic]
and went back to my house. 


 I went back to the house and retrieved another shell (1 or 2) I went back to the trailor [sic] (Steve's)
and told him that he was going to leave tonight. He (Steve) was yelling that I had shot his dog. I told
him that we had shot the dog and that we could get him (Rossco) to the vet to have him (Rossco) fixed. 
He then jumped at me again and said, I didn't have the balls to run him (Steve) off. I told him (Steve)
that I was not going play with him no more and to get in his car and leave until tomorrow when we
cooled down. He (Steve) stood there and started yelling, 'You don't have the balls to shoot me so just
try to shoot me, just shoot me,' I then brought the gun up and fired in his area. He fell down and I
heard noised [sic] coming from him. I then went and sat on my porch to cool off. 

 

 In his statement, Appellant wrote that his wife came out onto the porch and asked him what
had happened. The statement continued:


 I told her that I think I may of shot him but he was still making noises. I got up and told her that I had
to go finish this. I believed he was playing oppsum [sic]. I put another shell in the gun and walked
over to where he (Steve) was lying. I talked to him as I walked up to him (Steve) and told him that
if he was hurt lets [sic] go to the hospital. He was lying on his stomach with his head on his hands. 
Steve was mumbling something I could not understand and I asked him again, are you hurt, more
mumbling. I went to lean over to touch Steve when he jerked up and hit the end of the gun. Which
made me tighten up my grip on the gun and it went off. He was hit in the back of the head with such
force it knock me off balance. I could tell that he was in bad condition. He rolled over on to his back
and was looking up into night with fixed stare. I could tell he was dead.



 According to his statement, Appellant then destroyed the spent shells and threw the shotgun
in the pond behind his trailer in an effort to conceal his involvement in the shooting.

 It is well settled that an accused has the right to an instruction on any defensive issue raised
by the evidence, whether that evidence is weak or strong, unimpeached or contradicted, credible or
not credible. Granger v. State, 3 S.W.3d 36, 38 (Tex. Crim. App. 1999); Dyson v. State, 672 S.W.2d
460, 463 (Tex. Crim. App.1984). It is also settled that an affirmative instruction may be required
whether the evidence raising the defensive issue is presented by the State or by the defense. 
Granger, 3 S.W.3d at 38 n. 2. Conversely, if the evidence, viewed in a favorable light, does not
establish the defense, an instruction is not required. Dyson, 672 S.W.2d at 463. 

 A person is justified in using force against another when and to the degree he reasonably
believes the force is immediately necessary to protect himself against another's use or attempted use
of unlawful force. Tex. Pen. Code Ann. § 9.31(a) (Vernon Supp. 2002). The force used by a
defendant must be reasonable as contemplated from the defendant's point of view. Hudson v. State,
956 S.W.2d 103, 105 (Tex. App.-Tyler 1997, no pet.). However, the use of force against another
is not justified in response to verbal provocation alone. Tex. Pen. Code Ann. § 9.31(b). 
Furthermore, the use of deadly force in self-defense is justified only under certain circumstances: (1)
if the defendant would be justified in using force under section 9.31; (2) if a reasonable person in the
defendant's situation would not have retreated; and (3) if the defendant reasonably believed that the
use of deadly force was immediately necessary to protect him against another's use or attempted use
of unlawful deadly force. See Tex. Pen. Code Ann. § 9.32(a) (Vernon Supp. 2002). In the absence
of evidence that the victim used or tried to use deadly force, a defendant is not entitled to an
instruction under section 9.32. Werner v. State, 711 S.W.2d 639, 644 (Tex. Crim. App. 1986). 

 In the instant case, no evidence showed that, at the time Appellant shot him, Compton was
using or attempting to use unlawful deadly force against Appellant. To the contrary, Appellant's
statement shows that the first time Appellant shot Compton, it was in response to Compton's
taunting that Appellant did not have the courage to shoot him. According to Appellant's statement,
Appellant shot Compton a second time while Compton was lying wounded on the ground. There is
no evidence that Appellant reasonably believed that his use of deadly force was immediately
necessary for his protection.

 Furthermore, a charge on self-defense is unwarranted if there is no evidence showing that a
reasonable person would not have retreated. Riddle v. State, 888 S.W.2d 1, 7 (Tex. Crim. App.
1994); Werner, 711 S.W.2d at 645. Here, there is no evidence showing a reasonable person would
not have retreated. In fact, Appellant had a clear opportunity to retreat and did retreat after Compton
threatened to "whoop" him. However, instead of staying at his home once he had retreated,
Appellant returned to Compton's trailer three times, shooting Compton's dog the first time and
shooting Compton on the second and third occasions that he returned. 

 Based on the foregoing reasons, we hold that the trial court's refusal to instruct the jury on
self-defense was proper. Therefore, Appellant's first issue is overruled.


Motion for Mistrial

 In his second issue, Appellant contends that the trial court erred by refusing to grant his
motion for mistrial made during the testimony of one of two police officers who testified as
reputation witnesses. 

 Two San Angelo police department officers, Charles Foerster ("Foerster") and Marcus
Hooker ("Hooker"), testified during the punishment phase of the trial. Appellant argues that Foerster
gave a nonresponsive answer to the State's inquiry whether Foerster knew Appellant's reputation
for being a peaceful and law-abiding citizen. However, Appellant did not object at trial to Foerster's
testimony, and, therefore, he has not preserved the issue, as to Foerster, for our review. See Tex. R.
App. P. 33.1(a).

 We next address Appellant's complaint regarding the testimony of Hooker. After Hooker
testified that he knew Appellant's reputation in his community, the State asked him to describe that
reputation. Hooker responded, "Based upon our experiences, it would be of an individual with
violent tendencies." Appellant objected that the answer was not responsive, and the trial court
sustained the objection. Next, Appellant asked the trial court to instruct the jury to disregard the
statement, and the trial court did so. Appellant then moved for a mistrial which the trial court
denied. Shortly thereafter, when Hooker testified that he was familiar with Appellant's reputation
"within our department," Appellant objected that Hooker was not qualified to testify to his reputation
but declined the trial court's offer to voir dire the witness. The trial court overruled the objection. 
Then, Hooker testified that he was not familiar with Appellant's reputation for being a peaceful and
law-abiding citizen in the community. Hooker was then asked no other questions about Appellant's
reputation. Hooker did testify, however, without objection about a specific bad act.

 The denial of a motion for mistrial is reviewed under the abuse of discretion standard. See
Trevino v. State, 991 S.W.2d 849, 851 (Tex. Crim. App. 1999). A trial court does not abuse its
discretion when its decision lies within the zone of reasonable disagreement. See Montgomery v.
State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990).

 Appellant argues that Hooker was not qualified under the Texas Rules of Evidence to testify
about his reputation in the community. See Tex. R. Evid. 405(a). However, Hooker did not testify
about Appellant's reputation after the objection; he only testified regarding a specific bad act without
objection.

 Furthermore, the trial court instructed the jury to disregard Hooker's testimony that Appellant
had a reputation as being "an individual with violent tendencies." An instruction to disregard is
presumed to cure error except in extreme circumstances where the evidence is "clearly calculated
to inflame the minds of the jury and is of such a character as to suggest the impossibility of
withdrawing the impression produced on their minds." Branch v. State, 932 S.W.2d 577, 584 (Tex.
App.-Tyler 1995, no pet.). We do not find from the record that the statement in question was of
such a character that the impression on the jurors' minds was withdrawn by the court's instruction.
Appellant has failed to overcome the presumption that the trial court's instruction to disregard cured
the error, if any. It is at least subject to reasonable disagreement that the trial court should have
denied Appellant's motion for mistrial, and, therefore, we hold that the trial court did not abuse its
discretion by denying the motion. Accordingly, Appellant's second issue is overruled.


Improper Question

 In his third issue, Appellant argues that the prosecutor engaged in misconduct by posing
questions to Appellant's punishment witness which assumed facts not in evidence. 

 Appellant's sister testified in his behalf during the punishment phase of the trial. After she
testified that she did not believe Appellant should serve any jail time, the following colloquy
occurred:


 Prosecutor: Even though he killed a man in cold blood?


 Witness: After being pushed for how long?


 Prosecutor: You believe he did that even though he killed
a man in cold blood, 'yes' or 'no'?


 Appellant's counsel: Objection, your honor. There's no evidence
that he killed the man in cold blood. That's
assuming facts not in evidence.



 The trial court sustained the objection and instructed the jury to disregard the "last question"
but denied Appellant's motion for mistrial. 

 To preserve his complaint for appellate review, the record must show that Appellant made
a timely objection. Tex. R. App. P. 33.1(a). Appellant waited until the State had asked the question,
the witness had answered, and the State had asked the question a second time before he objected.
Because his objection was untimely, and because he can show no reason for the delay in objecting,
Appellant has waived his complaint on appeal. See Lagrone v. State, 942 S.W.2d 602, 618 (Tex.
Crim. App. 1997) ("If a defendant fails to object until after an objectionable question has been asked
and answered, and he can show no legitimate reason to justify the delay, his objection is untimely
and error is waived.").

 Furthermore, even if error, if any, had not been waived, we would overrule Appellant's issue
because the trial court instructed the jury to disregard the question. A prompt instruction to disregard
will cure error associated with an improper question unless it is clearly prejudicial to the defendant
and is of such character as to suggest the impossibility of withdrawing the impression produced on
the jurors' minds. See Ovalle v. State, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000); Ladd v. State,
3 S.W.3d 547, 567 (Tex. Crim. App. 1999). It must be noted that the question in issue came after
the jury had already convicted the Appellant of first degree murder. Though the wording of the
question was not particularly probative, it was also not of such a prejudicial nature that required
more than an instruction to disregard even after the belated objection. Therefore, Appellant's third
issue is overruled. 

 The judgment of the trial court is affirmed.




 LOUIS B. GOHMERT, JR. 

 Chief Justice



Opinion delivered August 30, in the Year of our Lord 2002.

Panel consisted of Gohmert, Jr., C.J., Worthen, J., and Griffith, J.















(DO NOT PUBLISH)
1. The dog was severely injured and had to be put to sleep. 
2. Spelling and grammar are reproduced as they appear in the original document.