Vincent Edward Davis v. State















IN THE
TENTH COURT OF APPEALS
 

No. 10-00-189-CR

     VINCENT EDWARD DAVIS,
                                                                         Appellant
     v.

     THE STATE OF TEXAS,
                                                                         Appellee
 

From the County Court at Law No. 2
McLennan County, Texas
Trial Court # 994132 CR2
                                                                                                                
                                                                                                         
O P I N I O N
                                                                                                                

      A jury convicted Vincent Edward Davis of assaulting his eight-year-old stepson by spanking
him with an extension cord. The court assessed Davis’s punishment at ninety days’ confinement
and a $4,000 fine, suspended imposition of sentence, and placed him on community supervision
for twenty-four months. Davis contends in a single point that the court abused its discretion by
excluding evidence of his stepson’s school disciplinary records which Davis offered to support his
defense that he reasonably believed that spanking with the extension cord was necessary to
discipline his stepson on the occasion in question.
      Davis does not contest the State’s allegation that he caused bodily injury to his stepson D.W.
by hitting him with an extension cord.


 Rather, he sought to show the jury that D.W. had long
posed behavioral problems and that personnel at D.W.’s school and his wife and he had employed
numerous degrees and modes of discipline to improve his behavior, all to no avail. In sum, Davis
sought to establish that all prior methods of discipline had failed and that he reasonably believed
that it was necessary to discipline D.W. by spanking him with an extension cord as he did after
D.W. was expelled from summer school on the date in question.
      Davis called the records custodian from D.W.’s elementary school as the sponsoring witness
for his school records. She testified that he was enrolled at the school from August 1998 until July
1999. He did not return to the school in August 1999. The custodian provided sufficient
testimony to establish the predicate for admitting the records under the business records exception
to the hearsay rule. See Tex. R. Evid. 803(6).
      Davis offered a copy of the records in evidence as Defendant’s Exhibit 1. The State objected
that some of the records were irrelevant because they reflected events which occurred before Davis
became D.W.’s stepfather. The parties approached for a bench conference outside of the court
reporter’s hearing. Davis then offered Defendant’s Exhibit 2, which consisted of copies of
disciplinary referrals D.W. received on June 28 and July 8, 1999, the latter being the date on
which he was expelled from summer school.
      After the parties rested, Davis made an offer of proof regarding the remainder of the school
records. The custodian testified to the details of a number of disciplinary referrals D.W. received
throughout the 1998-1999 school year. At the conclusion of this testimony, Davis’s counsel
informed the court that Davis was “by way of bill of exception, offer[ing] Defendant’s Exhibit 1.” 
The court asked counsel for the State if she needed to review it again, to which she replied in the
negative.
      Davis’s counsel then informed the court that he was “excepting to the ruling of the Court.” 
He asked the court to have the exhibit “included for appellate purposes” and cited different legal
arguments to support the admissibility of the records. The court responded, “This document is
accepted for purposes of appeal, and I understand that’s what your tender is.”
      The State initially responds that Davis did not properly preserve his sole issue for our review
because he did not obtain a ruling. Rule of Appellate Procedure 33.1(a)(2)(A) requires for
preservation purposes that the trial court “expressly or implicitly” rule on the proponent’s request
that the evidence be admitted. Tex. R. App. P. 33.1(a)(2)(A); Gutierrez v. State, 36 S.W.3d 509,
511 (Tex. Crim. App. 2001). In Rey v. State, the Court of Criminal Appeals embraced the
concept of preservation by implicit ruling even though former appellate rule 52(a) did not employ
that term. 897 S.W.2d 333, 336 (Tex. Crim. App. 1995); see also Tex. R. App. P. 52(a),707-708
S.W.2d (Tex. Cases) lxiv (Tex. Crim. App. 1986, amended 1997).



      In Rey, the Court found preservation by implicit ruling under a record which reflected that
the appellant had “twice requested the court to make a ruling and then stated for the record that
the court had denied his motion. Neither the court nor the State corrected that statement.” 897
S.W.2d at 336-37. Similarly in Davis’s case, counsel offered the school records for admission,
and the State objected. The parties approached the bench for an unrecorded conference. Davis
then offered a portion of the school records which did not offend the basis of the State’s objection. 
At the conclusion of the trial, Davis made an offer of proof “for appellate purposes” and excepted
to the court’s “ruling.” Neither the court nor the State contradicted or corrected counsel’s
statement that the court had ruled on the admissibility of the school records. From this record,
we conclude that the trial court implicitly sustained the State’s objection to D.W.’s school records. 
Cf. Rey, 897 S.W.2d at 336-37.
      We review a trial court’s evidentiary rulings under an abuse-of-discretion standard. Lopez
v. State, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002). We will not disturb such rulings unless
they lay outside “the zone of reasonable disagreement.” Id. (citing Montgomery v. State, 810
S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh’g)).
      Section 9.61 of the Penal Code justifies “[t]he use of force, but not deadly force, against a
child younger than 18 years”:
(1) if the actor is the child’s parent or stepparent or is acting in loco parentis to the
child; and
 
(2) when and to the degree the actor reasonably believes the force is necessary to
discipline the child or to safeguard or promote his welfare.

Id. § 9.61(a) (Vernon 2003). Insofar as this statute focuses on what “the actor reasonably
believes,” it is virtually identical to the self-defense statute (section 9.31), which justifies the use
of “force against another when and to the degree [the actor] reasonably believes the force is
immediately necessary to protect himself against the other’s use or attempted use of unlawful
force.” See id. § 9.31(a) (Vernon 2003).
      Because the statutes are identical in this regard and because our research has disclosed a
dearth of authority on the proper application of section 9.61, we look to settled case law on self-defense to assist in determining whether the court abused its discretion by excluding the proffered
evidence.
      When a jury considers whether a defendant acted in self-defense, it must “view the
reasonableness of the defendant’s actions solely from the defendant’s standpoint.” Ex parte
Drinkert, 821 S.W.2d 953, 955 (Tex. Crim. App. 1991) (citing Bennett v. State, 726 S.W.2d 32,
37-38 (Tex. Crim. App. 1986)); accord Hudson v. State, 956 S.W.2d 103, 105 (Tex. App.—Tyler
1997, no pet.); Courtney v. State, 908 S.W.2d 48, 52 (Tex. App.—Houston [1st Dist.] 1995, pet.
ref’d). Or as the Court stated in Bennett, the reasonableness of the defendant’s belief “must be
judged from the standpoint of the accused at the instant he responds to the attack.” 726 S.W.2d
at 37-38. The same necessarily applies when a jury determines whether a defendant reasonably
believed that the force he used was “necessary to discipline the child or to safeguard or promote
his welfare.” See Tex. Pen. Code Ann. § 9.61(a)(2).
      The Penal Code defines a “reasonable belief” as “a belief that would be held by an ordinary
and prudent man in the same circumstances as the actor.” Id. § 1.07(a)(42) (Vernon 2003). As
the Amarillo Court of Appeals has explained, “The [reasonable belief] standard is an objective
standard.” Assiter v. State, 58 S.W.3d 743, 748 (Tex. App.—Amarillo 2000, no pet.). Although
the jury employs an objective standard to determine the reasonableness of the defendant’s belief,
it must view the facts from the defendant’s perspective. See Drinkert, 821 S.W.2d at 955;
Bennett, 726 S.W.2d at 37-38; Hudson, 956 S.W.2d at 105; Courtney, 908 S.W.2d at 52.
      Davis offers three theories under which the court should have admitted the school records:
(1) evidence of a pertinent character trait of the victim under Rule of Evidence 404(a)(2); (2)
evidence of his “intent and plan in punishing the child” under Rule 404(b); and (3) his due process
right to present evidence to support his defensive theory notwithstanding statutes and evidentiary
rules which would ordinarily exclude the evidence.
      Rule 404(a)(2) permits a party in a criminal case to offer “evidence of a pertinent character
trait of the victim.” Tex. R. Evid. 404(a)(2). Rule of Evidence 405 limits the reach of Rule
404(a), however. See Tex. R. Evid. 405; Tate v. State, 981 S.W.2d 189, 192 (Tex. Crim. App.
1998). Rule 405 generally limits permissible character evidence to opinion or reputation
testimony. See Tex. R. Evid. 405(a); Tate, 981 S.W.2d at 192 & n. 5. Rule 405(b) permits
evidence of specific acts as character evidence only when the “person’s character or character trait
is an essential element of a charge, claim or defense.” Tex. R. Evid. 405(b).
      The Court of Criminal Appeals has held that a murder victim’s violent character “is not an
essential element of a claim of self-defense.” Tate, 981 S.W.2d at 192 n. 5. We likewise hold
that a child’s character is not an essential element when a defendant seeks to justify his conduct
under section 9.61. Therefore, D.W.’s school records were not admissible as character evidence
under Rule 404(a)(2).
      Nevertheless, evidence of a murder victim’s prior acts of violence may be admissible under
Rule 404(b) to show the state of mind of a defendant who claims he acted in self-defense. Torres
v. State, 71 S.W.3d 758, 760 & n. 4 (Tex. Crim. App. 2002); Mozon v. State, 991 S.W.2d 841,
846 (Tex. Crim. App. 1999). To be admissible on this basis, the defendant must show that he was
aware of the prior acts. Torres, 71 S.W.3d at 760 n. 4; Mozon, 991 S.W.2d at 845. Accordingly,
we conclude that evidence of a child’s prior acts of misbehavior (of which the defendant was
aware) is admissible under Rule 404(b) to show the state of mind of a defendant such as Davis who
claims that he reasonably believed it was necessary to use the amount of force he did to discipline
the child.
      Davis testified that he began to live with D.W.’s mother Michelle and her children in the
summer of 1998. They married in November 1998. He stated that Michelle “was having
problems” with D.W. when he met her. They were “receiving reports” from school about his
misbehavior. From this we conclude that Davis presented sufficient evidence that he was aware
of D.W.’s acts of misbehavior at school as reflected by the school records which the trial court
excluded.
      The excluded portion of D.W.’s school records reflect eight disciplinary referrals for
misbehavior from November 1998 to April 1999. Davis was aware of these referrals. 
Accordingly, evidence of these eight instances of misconduct was admissible under Rule 404(b)
to show Davis’s state of mind in punishing D.W. on the occasion in question. Therefore, the
court abused its discretion by excluding this evidence. We must now determine whether this error
requires reversal.
      The erroneous exclusion of a defendant’s evidence generally constitutes non-constitutional
error unless the excluded “evidence forms such a vital portion of the case that exclusion effectively
precludes the defendant from presenting a defense.” Potier v. State, 68 S.W.3d 657, 665 (Tex.
Crim. App. 2002). We have determined that the excluded evidence in Davis’s case is relevant to
his defensive theory. However, its exclusion did not prevent him “from presenting the substance
of his defense to the jury.” Id. at 666 (quoting U.S. v. Willie, 941 F.2d 1384, 1399 (10th Cir.
1991)). Accordingly, we will determine whether the erroneous exclusion of D.W.’s school
records requires reversal using the harm analysis set out in Rule of Evidence 103(a) and Rule of
Appellate Procedure 44.2(b).


 See Tex. R. Evid. 103(a); Tex. R. App. P. 44.2(b); Potier, 68
S.W.3d at 666.
      This error does not require reversal unless we conclude that Davis’s “substantial rights” were
affected thereby. Id. As this Court has explained,
In applying the test for “harmless error,” our primary question is what effect the
error had, or reasonably may have had, upon the jury’s decision. We must view the
error, not in isolation, but in relation to the entire proceedings. An error is harmless if
the reviewing court, after viewing the entire record, determines that no substantial rights
of the defendant were affected because the error did not influence or had only a slight
influence on the verdict. Stated another way, an error is harmless if the court is sure,
after reviewing the entire record, that the error did not influence the jury or had but a
very slight effect on its verdict.

      . . . .
 
The error must have affected the outcome of the lower court proceedings. That is
to say, if we have “grave doubts” about whether an error did not affect the outcome, we
must treat the error as if it did. “Grave doubt,” means that, “in the judge’s mind, the
matter is so evenly balanced that he feels himself in virtual equipoise as to the
harmlessness of the error.” The uncertain judge should treat the error, not as if it were
harmless, but as if it affected the verdict (i.e., as if it had a “substantial and injurious
effect or influence in determining the jury's verdict”).

Fowler v. State, 958 S.W.2d 853, 865 (Tex. App.—Waco 1997) (quoting O’Neal v. McAninch,
513 U.S. 432, 435, 115 S. Ct. 992, 994, 130 L. Ed. 2d 947, 951 (1995)) (other citations omitted),
aff’d, 991 S.W.2d 258 (Tex. Crim. App. 1999).
      Davis presented testimony from several sources regarding D.W.’s past misdeeds and the
different means of discipline Michelle and he had employed in an effort to improve his behavior. 
Michelle implored an acquaintance in the police department to speak with D.W. as a “scare
tactic.” This officer testified that he talked with D.W. about his “constant misconduct.” When
the prosecutor asked D.W.’s grandmother whether he was “a bad little boy” prior to the occasion
in question, she responded, “Yes, he had his moments.” On cross-examination, she agreed that
D.W. had been “put off the bus before” for his misbehavior, that he had “acted out at school on
numerous occasions,” and that Michelle and Davis had “chastised him for that.” D.W. testified
that he “got in trouble” on other occasions and that he was disciplined in different ways. He
provided little detail, however. Davis’s brother testified that Davis tried various methods of
discipline with D.W. 
      Davis testified that Michelle and he had been “having all kinds of problems” with D.W. They
had “talked to him numerous times about misbehaving in school.” According to Davis, they had
“exhausted all types and means” of discipline. He considered D.W.’s behavior which resulted in
his expulsion from summer school to be “extreme because he threatened to punch a teacher in the
nose.” He listed several means of discipline which they had tried in the past: spankings with a
belt; timeout; taking toys away; manual labor; having the police officer threaten to take him to the
juvenile detention center as a “scare tactic”; and having D.W. assume a position on the floor
which required him to be on his elbows and tiptoes for a period of time.
      The court allowed Davis to offer evidence regarding two disciplinary referrals. The first
occurred on June 28, 1999, ten days before D.W. was expelled from school. His teacher made
this referral because D.W. was “talking, not doing his work, and after being corrected he back
talked [her].” The teacher made the second referral because D.W. had been having “a very
difficult time following rules the last two days” and after she corrected him about something, “he
said he was going to hit [her] in the nose.” The principal expelled D.W. in response to this
second referral.
      In sum, Davis presented evidence in some detail regarding the various means of discipline he
had tried to improve D.W.’s behavior. He was able to present only very general evidence about
D.W.’s misbehavior, with the exception of the June 28 and July 8 referrals. As stated, the
excluded records included eight disciplinary referrals ranging from November 1998 to April 1999. 
We must determine whether the court’s exclusion of these eight instances of D.W.’s misconduct
“did not influence the jury or had but a very slight effect on its” rejection of his defensive theory. 
Fowler, 958 S.W.2d at 865.
      Our review of the record convinces us that the exclusion of the school records had at most a
slight effect on the verdict. Three of the referrals occurred over a five-day period in November
1998. D.W. received one referral each month (four total) from November 1998 to February 1999
for misbehavior on the bus. Finally, he received a referral in April 1999. More than two months
passed before D.W. received another referral.
      Davis’s testimony implies that he had reached a point where he felt there was nothing else he
could do to improve D.W.’s behavior. Given the passage of time between the April referral and
the June and July referrals and considering that the jury was plainly informed that D.W. had
engaged in unspecified misconduct throughout the course of the school year, we hold that the
court’s erroneous exclusion of D.W.’s school records did not affect Davis’s substantial rights. 
See Tex. R. Evid. 103(a); Tex. R. App. P. 44.2(b). Accordingly, we overrule his sole point.
      We affirm the judgment.
 
                                                                   REX D. DAVIS
                                                                   Chief Justice

Before Chief Justice Davis,
      Justice Vance, and
      Justice Gray
Affirmed
Opinion delivered and filed March 26, 2003
Publish
[CR25]