NO.
12-07-00134-CR

 

IN THE COURT OF APPEALS 

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

            §                      APPEAL FROM THE

 

EX PARTE
COLIN McANDREW   §                      COUNTY COURT AT LAW

 

§                      HOUSTON COUNTY, TEXAS

                                                                                                                                                      


            MEMORANDUM OPINION

            Appellant
Colin McAndrew filed an application for a writ of habeas corpus in the trial
court after he was convicted of assault. 
Appellant alleged ineffective assistance of counsel by his trial
attorney.  After an evidentiary hearing,
the trial court denied habeas relief. 
Appellant appeals the trial court’s denial, again arguing, in one issue,
that he was denied effective assistance of counsel at trial.  We affirm.

 

Background

            Appellant was charged with the
assault of James Mitchell, the husband of Appellant’s ex-wife, Krystal
Mitchell.  The assault had occurred
during an altercation that began when Appellant arrived at Krystal’s home to
pick up his children for the weekend.  A
jury found Appellant guilty and assessed punishment of confinement for one year
and a fine of $4,000, probated over two years. 









            Appellant appealed his
conviction.  See McAndrew v. State,
No. 12-03-00297-CR, 2005 WL 674195 (Tex. App.–Tyler Mar. 23, 2005, pet. ref’d)
(mem. op., not designated for publication). 
Among Appellant’s issues were complaints that his trial counsel was
unconstitutionally ineffective. Id., at *6.  Appellant had filed a motion for new trial,
alleging ineffective assistance of counsel. 
Id., at *7. 
However, he had not called counsel as a witness nor had he provided an
affidavit from counsel explaining his actions. 
Id.  We held that “[i]n
the absence of a record identifying what trial counsel’s reasons may have been
for pursuing the chosen course, we must presume the actions were taken
deliberately as part of sound trial strategy.”[1]  Id.  Therefore, we overruled Appellant’s
ineffective assistance complaints and affirmed his conviction.  Id., at *7-8.  Appellant then petitioned the court of
criminal appeals for discretionary review, which was refused.

            Appellant filed an application for a
writ of habeas corpus, together with a motion for an evidentiary hearing on the
application.  The sole issue for habeas
relief was a claim that Appellant was denied effective assistance of counsel at
trial.  The trial court denied the writ
without a hearing.  On appeal, we reversed
the trial court’s denial and remanded the case to the trial court for a hearing
on the writ application.  Ex parte
McAndrew, No. 12-06-00179-CR, 2006 WL 3086183, at *2 (Tex. App.–Tyler
Nov. 1, 2006, no pet.) (mem. op., not designated for publication).  This hearing was to afford Appellant the
opportunity “to develop testimony to substantiate his claims of ineffective
assistance of counsel.”  Id.  After conducting the required hearing, the
trial court again denied Appellant habeas relief.  This appeal followed. 

 

Ineffective Assistance of Counsel

            In his sole issue, Appellant
contends that his trial counsel’s performance fell below prevailing
professional norms, denying him the right to effective assistance of counsel as
guaranteed by the Sixth Amendment to the United States Constitution.

Standard
of Review

            Applications for Habeas Corpus
Relief

            An applicant for a writ of habeas
corpus bears the burden of proving his factual allegations by a preponderance
of the evidence.  See Ex parte
Thomas, 906 S.W.2d 22, 24 (Tex. Crim. App. 1995).  In reviewing the trial court’s
decision, appellate courts review the facts in the light most favorable to that
decision and should uphold it absent an abuse of discretion.  Ex parte Peterson, 117 S.W.3d 804, 819
(Tex. Crim. App. 2003).  A trial court
does not abuse its discretion when its decision is within the zone of
reasonable disagreement.  See Montgomery
v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh’g).  Further, the trial court’s decision will be
upheld on appeal if it is correct under any provision of the law.  Ex parte Taylor, 36 S.W.3d 883, 886
(Tex. Crim. App. 2001).  This principle
holds true even where the trial court has given an erroneous reason for its
decision.  See Romero v. State,
800 S.W.2d 539, 543 (Tex. Crim. App. 1990).

            In weighing the evidence presented
at a habeas hearing, the trial court may accept or reject some or all of any
witness’s testimony.  Ex parte
Peterson, 117 S.W.3d at 819 n. 68. 
Article 11.072 of the Texas Code of Criminal Procedure establishes the
habeas procedure in felony and misdemeanor cases in which the applicant seeks
relief from an order or a judgment of conviction ordering community
supervision.  Tex.Code Crim. Proc. Ann. art. 11.072, § 1 (Vernon
2005).  Under article 11.072, if the
trial court determines from the face of an application, or documents attached
to the application, that the applicant is manifestly entitled to no relief, the
trial court shall enter a written order denying the application as
frivolous.  Tex.Code Crim. Proc. Ann. art. 11.072, § 7(a) (Vernon 2005).  In any other case, the trial court
shall enter a written order including findings of fact and conclusions of law.  Id. 
Such written findings of fact are especially helpful to appellate courts
in determining whether the trial court has rejected unrebutted testimony as
incredible or unworthy of belief.  Ex
parte Peterson, 117 S.W.3d at 819 n. 68.  








            Reviewing courts should “afford
almost total deference to a trial court’s determination of the historical facts
that the record supports, especially when the trial court’s fact findings are
based on an evaluation of credibility and demeanor.”  Id. at 819.  Appellate courts also afford that same level
of deference to a trial court’s ruling on “application of law to fact
questions,” also known as “mixed questions of law and fact,” if the resolution
of those ultimate questions turns on an evaluation of credibility and
demeanor.  Id.  Although we afford almost total deference to
a trial court’s determination of the historical facts, where a trial court’s
finding of fact is not supported by the record, appellate courts may hold that
the facts are contrary to the finding.  See
id. at 819 n. 67 (“[I]f the trial court’s ruling is not supported by
the record, this Court may make contrary findings.”); Ex parte Adams,
768 S.W.2d 281, 288 (Tex. Crim. App. 1989) (“If the record will not support the
trial judge’s [findings], then this Court may make contrary findings.”).  Accordingly, appellate courts are obligated
to determine if the record developed supports the trial court’s findings where
those findings are relevant to an appellate decision.  See Ex parte Adams, 768 S.W.2d
at 288.  Finally, appellate courts review
de novo those “mixed questions of law and fact” that do not depend upon
credibility and demeanor.  Ex parte
Peterson, 117 S.W.3d at 819.

            Ineffective Assistance of
Counsel

            The standard for testing claims of
ineffective assistance of counsel was set out in Strickland v. Washington,
466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), and is applicable to
this appeal.  See Hernandez v.
State, 726 S.W.2d 53, 54-57 (Tex. Crim. App. 1986).  To prevail on a claim of ineffective
assistance, an appellant must show that his attorney’s representation fell below
the standard of prevailing professional norms, and that there is a reasonable
probability that, but for the attorney’s deficiency, the result of the trial
would have been different.  Strickland,
466 U.S. at 687-88, 694, 104 S. Ct. at 2064-65, 2068.  A reasonable probability is a probability
sufficient to undermine confidence in the outcome.  Id., 466 U.S. at 694, 104 S. Ct. at
2068.  

            “[A] defendant need not show
that counsel’s deficient conduct more likely than not altered the outcome in
the case.”  Id., 466 U.S.
at 693, 104 S. Ct. at 2052 (emphasis added); see Pennington v. State,
768 S.W.2d 740, 741 (Tex. App.–Tyler 1988, no pet.).  The Supreme Court “found this ‘outcome
determinative’ standard . . . too heavy a burden on defendants, and that its use
was not appropriate.”  Nealy v.
Cabana, 764 F.2d 1173, 1178 (5th Cir. 1985) (citing Strickland,
[466 U.S. at 693-95], 104 S. Ct. at 2068-69). 
Instead, “[t]he result of a proceeding can be rendered unreliable . . .
even if the errors of counsel cannot be shown by a preponderance of the
evidence to have determined the outcome.”[2]  Strickland, 466 U.S. at 693, 104 S.
Ct. at 2052; see Doherty v. State, 781 S.W.2d 439, 442 (Tex. App.–Houston
[1st Dist.] 1989, no pet.).








            Our review of counsel’s
representation is highly deferential; we indulge a strong presumption that
counsel’s conduct falls within a wide range of reasonable representation.  Strickland, 466 U.S. at 689, 104 S.
Ct. at 2065.  This court will not second
guess through hindsight the strategy of counsel at trial, nor will the fact
that another attorney might have pursued a different course, without more,
support a finding of ineffectiveness.  See id.  But see Ex parte Duffy, 607
S.W.2d 507, 526 (Tex. Crim. App. 1980) (“Surely at some point ‘tactic’ becomes
an unsatisfactory justification for ineptness. And where silence which results
in waiver of potentially reversible error in almost all respects cannot be
explained by the practitioner, we are not warranted in excusing his major
derelictions.”).  Further, a reviewing
court will not find ineffectiveness by isolating any portion of counsel’s
representation, but will judge the claim based on the totality of the
representation.  See Strickland,
466 U.S. at 695, 104 S. Ct. at 2069.

Discussion

            Appellant complains of five
instances in which he alleges that trial counsel’s representation fell below
the standard of prevailing professional norms. 
We will discuss the first two together and the others separately.

Failure
to Object to Nonresponsive Testimony

            Appellant first complains
counsel was ineffective for failing to object to Krystal’s direct examination
testimony that Appellant has a habit of hitting people when he is mad.  The testimony was part of Krystal’s
description of how Appellant’s attempt to pick up his children for the weekend
had escalated into a fight between Appellant and James, a fight which was,
according to Krystal, started by Appellant. 
The State’s question and Krystal’s answer were as follows:

 








Q:            When
[Appellant] got out of [his] car what did he do?

A:            He
got out of his car like he was mad.  He
got out of the car.  I got between – in
between – in between he and [James] because when he’s mad he has a habit of
hitting people, [Appellant] does.  So I got in between them. (emphasis added)








 








            Krystal’s testimony regarding
Appellant’s propensity for violent conduct was not responsive to the State’s
question.  See Bowling v. State,
122 Tex. Crim. 7, 8-9, 53 S.W.2d 469, 469-70 (1932).  Likewise, this testimony was inadmissible
character evidence.  See Tex. R. Evid. 404.  Indeed, the State has made no attempt on
appeal to argue that this testimony was properly admissible.  Had trial counsel made a timely objection
that the testimony was nonresponsive and inadmissible character evidence,
Appellant would have been entitled to have the testimony stricken and to have
the trial court instruct the jury to disregard it.  See Smith v. State, 763 S.W.2d 836,
841 (Tex. App.–Dallas 1988, pet. ref’d) (addressing the predicate for objecting
to nonresponsive testimony). 
Nonetheless, trial counsel made no objection.

            The second instance complained of
occurred later, during Appellant’s trial counsel’s cross-examination of
Krystal.  Counsel asked Krystal, “you don’t
have a good relationship with Mr. McAndrew, do you?”  She responded, “No, he abused me for 14
years.”  The State has made no attempt on
appeal to argue that this testimony was properly admissible.  Like Krystal’s earlier testimony, this
testimony was nonresponsive and inadmissible character evidence.  See Tex.
R. Evid. 404; Bowling, 122 Tex. Crim. at 8-9, 53 S.W.2d at
469-70.  Again, however, trial counsel
made no objection.  

            At the habeas hearing, trial counsel
was questioned about his failures to object. 
Counsel testified that Appellant’s physical appearance and mannerisms
were very harmful to his case.  Counsel
stated that, based upon Appellant’s appearance and mannerisms, he altered his
trial strategy to one of “damage control.” 
According to counsel, “I didn’t want to draw any more attention to
[Appellant] than he had already drawn to himself.”  Based upon this trial strategy, counsel made
the decision each time to not object to Krystal’s testimony.  As trial counsel explained throughout the
habeas hearing,

            

. . . you have a client that is sitting there with his
sleeves rolled up, leaning forward in his chair, every time he hears something
he doesn’t like, looking like he’s ready to pounce . . . .  I assessed the overall credibility of the
witnesses and - - and my client and his actions, and yes, I determined at some
point [that] it was a losing cause.  We
had to run - - to do damage control, keep him out of jail, not inflame the jury
anymore [sic] than they were already inflamed by his actions and reactions
[that occurred in the courtroom]. . . . I decided during the course of this
trial that this jury had made up their mind long before [Appellant] took the
stand. . . . [Appellant’s] hair was a mess. 
He looked like he had just gotten out - - out of bed.  His shirt was all wrinkled.  It didn’t look like it had ever been starched
or ironed.  He came in.  He sat on the edge of his chair.  He rolled his sleeves up and he put his arms
on the table like he was ready to pounce . . . .  His - - his skin would flush [red] when he
heard something he didn’t like.  He
looked like he was going to get up and pounce. 
He just had a very bad appearance. 
We told him not to roll his sleeves up. 
We told him to sit still, don’t be shifting in his chair so much.  He wouldn’t listen.

 

            The
trial court echoed the problematic nature of Appellant’s appearance and
mannerisms in its written findings of fact, stating that








[t]rial counsel had a difficult defendant to manage
during the trial of the case and he expressed these concerns well during his
examination at [the habeas] hearing.  A
defendant who fails to follow the advise [sic] of counsel in maintaining a
proper demeanor during the trial can make it difficult for counsel to present a
case successfully to a jury.  While trial
counsel's performance may not have been perfect in hindsight, it was not
[deficient] in any manner . . . .

 

 

            An appellant bears the burden of
proving, by a preponderance of the evidence, that his attorney’s representation
fell below the standard of prevailing professional norms.  See Thompson, 9 S.W.3d at 813.  Reading the record before us, we are not in a
position, without more, to judge whether the risk of the jury focusing their
view on Appellant outweighed the prejudicial nature of the testimony in
question.[3]  Appellant has not met his burden to prove
that this aspect of trial counsel’s representation fell below the standard of
prevailing professional norms.[4]

            Failure
to Impeach with Written Statement

            Appellant’s third complaint is that
his counsel was unconstitutionally ineffective by failing to impeach Krystal
and James with a previous inconsistent written statement to the police.  The written statement, signed by Krystal,
read in pertinent part:

 

[Appellant] drove up the drive way . . . . [Appellant]
got out of the car [and was] yelling at me . . . .  James told him to leave and not [to] talk to
me that way. [Appellant] went to the side of me and knock[ed] James to the
ground (James says he missed[,] grabbed James by the neck[,] and knocked him to
the ground) . . . .  (emphasis
added).

 








            The information alleged that, on
December 14, 2002, Appellant “intentionally, knowingly, or recklessly cause[d]
bodily injury to James Mitchell, by striking James Mitchell in the face and
head area, causing his nose to be broken and bleeding with other facial
injuries.”  Therefore, the issue of
whether Appellant punched James in the face was pivotal to a conviction of
Appellant.  According to Appellant,
counsel’s failure to impeach constituted ineffective assistance because the
written statement contradicted Krystal’s and James’s trial testimony that
Appellant started the fight in question by punching James in the face.

            The outcome of the trial turned on
the credibility of the witnesses. 
Appellant, Krystal, and James were the only witnesses to testify about
whether Appellant punched James in the face to start the fight.  Both Krystal and James testified that the
fight began when Appellant punched James in the face.  Appellant testified that he did not punch
James in the face and that he acted in self defense. Because the outcome of the
trial turned on whether the jury believed Appellant or Krystal and James,
passing over the opportunity to impeach Krystal and James regarding their
version of the facts was an omission of a very serious nature.  

            The trial court stated in its
findings of fact and conclusions of law that

 

[t]he [written] statement would appear to bolster the
[State’s] witnesses. . . . The statement is unclear, reasonable people could
disagree as to whether the statement would impeach the statements made by
[Krystal and James] or not.  The decision
not to introduce the statement . . . was not outside the range of competent
legal counsel.

 

Taking
into account the totality of the representation, the trial court also made the
above quoted finding regarding the appearance and mannerisms of Appellant at
trial.








            Trial counsel testified at the
habeas hearing that he was pursuing the above described “damage control”
defensive strategy and that failing to use the impeachment evidence was
consistent with such a strategy.  In
reviewing the statement in its entirety, we note that it also included
statements that Appellant had not seen his children “for any amount of time for
4 months,”  was behind on child support,
and was using profanity during the incident, thereby bolstering Krystal’s and
James’s similar negative testimony regarding Appellant.  Further, while there appears to be a more
probable meaning to the written statement, it would not have been impossible
for a witness to explain the words of the statement differently.  Also, while we have some ability to weigh the
value of this impeachment evidence, our ability is not as great as that of the
trial court, who heard live testimony from the witnesses in question.  Finally, we are limited to reading the record
before us and, therefore, are not in a position, without more, to adequately
judge whether trial counsel’s damage control defensive strategy, based on
Appellant’s appearance and mannerisms at trial, was a reasonable strategy or
whether such a strategy’s implementation was more effective than the potential
impeachment value of the written statement. 
Appellant has not met his burden to prove, by a preponderance of the
evidence, that this aspect of trial counsel’s representation fell below the
standard of prevailing professional norms. 
See Thompson, 9 S.W.3d at 813.

            Failure to Call a Child
Witness

            In Appellant’s fourth subissue, he
complains that trial counsel provided ineffective assistance of counsel when he
failed to call Kara, Appellant and Krystal’s daughter, as a witness to
impeach  Krystal’s testimony that unpaid
child support was not a reason Krystal had refused to allow Appellant to pick
up his children.   He also complains that
trial counsel provided ineffective assistance when he failed to call Kara as a
witness to impeach James’s and Krystal’s testimony that Appellant told Kara to
shoot James with her mother’s rifle during the course of the fight in question.[5]  In a witness statement to police given on the
day of the offense, Kara stated that Krystal would not let Appellant pick up
the children because “he wouldn’t pay child support.”  Kara also wrote in the statement that Krystal
“yelled [at her] to go get the rifle” and when she got outside, she “saw my mom
yelling at [Appellant and James] to stop [and] James on top of my dad yelling
at me to shoot him.”  Finally, according
to Kara’s statement, her “mom said ‘give me the damn gun,’” and Kara complied.

            At trial, Krystal denied that the
argument which precipitated the fight in question was related to Appellant’s
delinquent child support payments and, instead, testified that Appellant had
come on the wrong weekend and that she had been apprehensive about letting him
pick up the children without first obtaining his new address.  Appellant complains that trial counsel should
have called Kara to impeach her mother. 
Trial counsel testified that he and Appellant decided not to call Kara,
and contended it was a trial decision, but did not recall the basis for that
decision.                      

            At trial,  Appellant’s trial counsel asked Krystal if
James had told Kara to shoot Appellant. 
Krystal denied that James told Kara to shoot Appellant.  James testified to the same.  Although trial counsel admitted that he could
have called Kara to impeach Krystal and James, he again explained that he and
Appellant had discussed Kara’s statement and that “it was a trial decision not
to call her.”  Again, counsel could not
recall the basis for that decision.  

            The trial court found, in its
written findings of fact, that 








[t]he decision to call a child or not to call a
child[] as a witness should be left to the discretion of trial counsel. . . .
The decision to place a child of the parties between her parents before a jury
must be evaluated carefully.  The
defendant calling a child to testify where she was not a direct witness to the
alleged offense could offend the sensibilities of a juror and harm the
credibility of the defendant.  The
decision not to call this child as a witness was clearly within the bounds of
sound trial strategy.

 

While
the evidence in the record does not support that this decision was “clearly
within the bounds of sound trial strategy,” this evidence also does not support
that it was not.  There is evidence of
the value of calling Kara to testify as well as testimony from trial counsel
that Appellant’s “damage control” defense was the best defense under the
circumstances.  Further, we agree with
the trial court that calling a child witness could “offend the sensibilities of
a juror.”  We have no direct evidence of
why trial counsel chose not to call Kara. 
Perhaps her father, Appellant, simply did not want her involved.  Without more, we can only speculate.  Appellant has not met his burden to prove, by
a preponderance of the evidence, that this aspect of trial counsel’s
representation fell below the standard of prevailing professional norms.  See Thompson, 9 S.W.3d at 813.

            Failure to Object to Closing
Argument

            In his final complaint, Appellant
contends trial counsel rendered ineffective assistance when he failed to object
to the prosecutor’s closing argument during the guilt-innocence phase of the
trial.  The jury charge included a self
defense instruction that the jury should consider whether it “reasonably
appeared to the defendant,” “viewed from the standpoint of the defendant at the
time,” “that his person was in danger of bodily injury . . . .”  The State argued during closing argument that


 

if you read that law that the judge just gave you
about self-defense it tells you that “a person is justified in using force
against another when and to the degree he reasonably believes the force is
immediately necessary to protect himself[.”] 
Now, that’s the reasonable person’s belief, not whether Colin McAndrew
believed or not that he needed to do that, but what a reasonable person
believed that he needed to do something if that reasonable person were standing
in Colin McAndrew’s shoes.

 

 








            Appellant claims that his trial
counsel should have objected to this argument as a misstatement of the
law.  We disagree.  The prosecution was correct in stating that
the belief would have to be a “reasonable person’s belief.”  Granted, this reasonable person would have to
be placed in the shoes of Appellant. 
However, there is simply no difference between a reasonable person in
the shoes of a defendant and a defendant who is required to act reasonably.  See Hudson v. State, 956 S.W.2d
103, 104-05 (Tex. App.–Tyler 1997, no pet.) (“A person is justified in using
force when and to the degree he reasonably believes the force is immediately
necessary to protect himself against the other’s use or attempted use of
unlawful force. . . . The force used by a defendant must be reasonable as
contemplated from the defendant’s point of view.”); see also Ex parte
Drinkert, 821 S.W.2d 953, 955 (Tex. Crim. App. 1991) (plurality
opinion) (“The law of self-defense and defense of property requires the jury to
view the reasonableness of the defendant’s actions solely from the defendant’s
standpoint.”).  Any objection to the
prosecution’s closing argument would have been pointless and trial counsel was
not ineffective by failing to make an objection.

            Conclusion

            We have held that Appellant has not
sufficiently proved that his trial counsel’s representation fell below the
standard of prevailing professional norms. 
Therefore, we hold that the trial court did not err in denying Appellant’s
writ of habeas corpus application.  We
overrule Appellant’s sole issue.

 

Disposition

            We affirm the trial
court’s denial of the writ of habeas corpus.

 

 

                                                                                                    SAM GRIFFITH   

                                                                                                               Justice

 

Opinion
delivered January 31, 2008.

Panel consisted of Worthen, C.J., Griffith, J., Hoyle,
J.

 

 

 

 

 

 

 

(DO NOT PUBLISH)











[1] As we noted in our
opinion, “[r]arely will a reviewing court be provided the opportunity to make
its determination on direct appeal with a record capable of providing a fair
evaluation of the merits of the claim involving such a serious allegation.
[(citation omitted)]  In the majority of
instances, the record on direct appeal is simply undeveloped and cannot
adequately reflect the failings of trial counsel.”  Id. (quoting Thompson v.
State, 9 S.W.3d 808, 813-14 (Tex. Crim. App. 1999)).

 





[2] Generally, an appellant bears the burden of proving, “by a
preponderance of the evidence,” that counsel was ineffective.  See, e.g., Thompson,
9 S.W.3d at 813.  However, no such showing
may be required to prove the prejudice prong of Strickland - “that
there is a reasonable probability that, but for the attorney’s deficiency, the
result of the trial would have been different.”  Strickland, 466 U.S. at 693, 104 S.
Ct. at 2052 (“[A] defendant need not show that counsel’s
deficient conduct more likely than not altered the outcome in the case.”); see
Holland v. Jackson, 542 U.S. 649, 654-55, 124 S. Ct. 2736, 2738-39
(2004).  Therefore, appellate courts
should not require a preponderance of the evidence in support of Strickland’s
prejudice prong.  However, in
relation to the first prong of Strickland, the unreasonable
deficiency prong, appellate courts should require a preponderance of the
evidence.





[3] The second instance of testimony complained of occurred during cross
examination.  Because Appellant’s trial
counsel was propounding questions, the jury could have already been looking in
Appellant’s direction.  However, trial
counsel, and not this court, could actually see which direction the jury was
looking.  We also note that despite his appearance, trial counsel offered
Appellant as a witness at trial. 
However, we cannot discern from the record why this decision was made or
if Appellant was, perhaps, more willing to follow his attorney’s instructions
when testifying than when sitting at the counsel table.





[4] This is especially
true of the second instance of testimony because of the trial court’s written
findings.  The trial court stated:

 

The [trial court] recalls that
this second statement, regarding alleged abuse, was spoken by Krystal . . .
with a rather sarcastic tone in her voice, not in a manner to bring out empathy
from the jury, and in a subdued voice which the jury[,] and perhaps defense
counsel[,] may not have actually heard or understood.





[5] During the scuffle, Krystal ordered her daughter, Kara, to retrieve
the rifle from their home.  An issue at
trial, and at the writ hearing, was whether Appellant told Kara to shoot James
or James told Kara to shoot Appellant, her own father.