PD-1557-14
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 12/19/2014 4:25:58 PM
Accepted 12/29/2014 10:30:09 AM
ABEL ACOSTA
CLERK

PD-1557-14

IN THE TEXAS COURT OF CRIMINAL APPEALS

FILED IN
COURT OF CRIMINAL APPEALS

December 29, 2014

ABEL ACOSTA, CLERK

# JUAN GARZA, JR.

*APPELLANT*

vs.

# THE STATE OF TEXAS

*APPELLEE*

FROM THE SIXTH COURT OF APPEALS
CAUSE NO. 06-14-00054-CR

APPEAL FROM CRIMINAL DISTRICT COURT NO. 2
OF DALLAS COUNTY, CAUSE NO. F12-30953-1,
THE HONORABLE DONALD C. ADAMS PRESIDING

# APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

BRUCE ANTON
State Bar No. 01274700
ba@sualaw.com

BRETT ORDIWAY
State Bar No. 24079086
bordiway@sualaw.com

SORRELS, UDASHEN & ANTON
2311 Cedar Springs, Suite 250
Dallas, Texas 75201
214-468-8100 (office)
214-468-8104 (fax)

*Counsel for Appellant*

## Ground for Review

Whether, in light of this Court's opinion in *Gutierrez v. State*, 36 S.W.3d 509 (Tex. Crim. App. 2001), the court of appeals erred in determining Garza's complaint was not preserved for review because he obtained no adverse ruling without considering whether the trial court made an implicit ruling on Garza's objection.

## Table of Contents

Ground for Review ..............................................................................................2

Index of Authorities........................................................................................ 4

Identity of Parties and Counsel ...................................................................5

Statement Regarding Oral Argument.......................................................... 6

Statement of the Case and Procedural History ........................................ 7

Argument ...........................................................................................................9

    In light of this Court's opinion in *Gutierrez v. State*, 36 S.W.3d 509
(Tex. Crim. App. 2001), the court of appeals erred in determining
Garza's complaint was not preserved for review because he obtained
no adverse ruling without considering whether the trial court made
an implicit ruling on Garza's objection. ................................................. 9

    I.  The court of appeals's incomplete analysis.................................. 9

    II.  For over 17 years, explicit rulings have not been required to
preserve a complaint for appeal ....................................................... 10

    III. There was, at the very least, a question of whether the trial
court implicitly ruled on Garza's objection ...................................... 12

Certificate of Service ..................................................................................... 20

Certificate of Compliance............................................................................ 20

Appendix ......................................................................................................... 21

# Index of Authorities

**Cases**

*Davis v. State*, 104 S.W.3d 177, 180 (Tex. App.—Waco 2003, no pet.) .. 19

*DeRusse v. State*, 579 S.W.2d 224, 235 (Tex. Crim. App. [Panel Op.] 1979) ...................................................................................... 10, 13

*Frazier v. Yu*, 987 S.W.2d 607, 609–10 (Tex. App.—Fort Worth 1999, pet. denied) ................................................................................. 11

*Garcia v. State*, 887 S.W.2d 862, 871 (Tex. Crim. App. 1994)................ 13

*Garza v. State*, No. 06-14-00054-CR, 2014 WL 5490947 (Tex. App.— Texarkana Oct. 30, 2014) ........................................................... passim

*Gutierrez v. State*, 36 S.W.3d 509 (Tex. Crim. App. 2001) . 2, 9, 12, 13, 19

*Jones v. State*, 111 S.W.3d 600, 606 (Tex. App.—Dallas 2003, pet. ref'd) ...................................................................................................... 19

*Pescaia v. State*, No. 06-04-00042-CR, 2004 WL 2359305, at *2 (Tex. App.—Texarkana 2004)................................................................. 12

*Rey v. State*, 897 S.W.2d 333, 336 (Tex. Crim. App. 1995)..................... 18

*State v. Kelley*, 20 S.W.3d 147, 153 n. 3 (Tex. App.—Texarkana 2000, no pet.) ..................................................................................... 11, 12

**Statutes**

TEX. GOV'T CODE § 73.001................................................................... 8, 13

TEX. PEN. CODE § 22.02(a)(2)..................................................................... 7

**Rules**

TEX. R. APP. P. 33.1(a)(2)(A) ................................................................... 11

TEX. R. APP. P. 52(a) ............................................................................... 11

## Identity of Parties and Counsel

For Appellant Juan Garza, Jr.:

> LAWRENCE PATRICK DAVIS
> > *Trial counsel of record*
>
> LAW OFFICE OF L. PATRICK DAVIS, PLLC
> 115 North Henderson Street
> Fort Worth, Texas 76102
>
> BRUCE ANTON
> BRETT E. ORDIWAY
> > *Appellate counsel of record*
>
> SORRELS, UDASHEN & ANTON
> 2311 Cedar Springs, Suite 250
> Dallas, Texas 75201

For Appellee the State of Texas:

> RONTEAR FARMER
> > *Trial counsel of record*
>
> DALLAS COUNTY DISTRICT ATTORNEY'S OFFICE
> 133 North Riverfront Boulevard
> Dallas, Texas 75207
>
> KIMBERLY J. DUNCAN
> > *Appellate counsel of record*
>
> DALLAS COUNTY DISTRICT ATTORNEY'S OFFICE

## Statement Regarding Oral Argument

The Texarkana Court of Appeals's error was both glaring and simple. Accordingly, Garza does not believe oral argument will be helpful to this Court's understanding—it's all on the page.

## Statement of the Case and Procedural History

The complainant's neighbor observed her walking down the sidewalk in her nightgown. (RR6: 18-19). She was bruised, swollen, had dried blood underneath her nose, and was "visibly shaken up." (RR6: 18-19, 22). The neighbor approached her, and she told him "that she had been beaten up by [her boyfriend, Garza,] who "had a weapon." (RR6: 21). The neighbor called 9-1-1, and the responding police officer, too, perceived the complainant to be "shaken," "very upset." (RR6: 22-23, 118; SX1). The complainant told him that Garza had returned home intoxicated and assaulted her. (RR6: 119-20). The complainant further stated that Garza had pointed a gun at her and threatened to kill her. (RR6: 122).

Garza was indicted for aggravated assault with a deadly weapon. (RR6: 107; CR: 19); *see* TEX. PEN. CODE § 22.02(a)(2). Specifically, the indictment alleged that Garza intentionally, knowingly, and recklessly caused bodily injury to the complainant by striking her "with a hand and hands and by grabbing and squeezing [her] neck with a hand and hands." (CR: 19). The indictment further alleged that Garza "use[d] and exhibit[ed] a deadly weapon; to wit, a firearm, during the commission of

7

the assault." (CR: 19). Garza pleaded not guilty, but at the conclusion of his trial the jury found him guilty and sentenced him to 35 years' imprisonment and a $10,000 fine. (RR5; RR6: 14, 138, 180; RR7: 25; CR: 163).

Garza appealed his conviction on three grounds. *Garza v. State*, No. 06-14-00054-CR, 2014 WL 5490947 (Tex. App.—Texarkana Oct. 30, 2014). The Texas Supreme Court ordered the appeal transferred to the Texarkana Court of Appeals in order to balance the courts of appeals's dockets. *See* TEX. GOV'T CODE § 73.001. That court rejected each of Garza's other grounds, though, and affirmed his conviction, and no motion for rehearing was filed. *Garza*, 2014 WL 5490947.

**<u>Argument</u>**

> In light of this Court's opinion in *Gutierrez v. State*, 36 S.W.3d 509 (Tex. Crim. App. 2001), the court of appeals erred in determining Garza's complaint was not preserved for review because he obtained no adverse ruling without considering whether the trial court made an implicit ruling on Garza's objection.

◆ ◆ ◆

## I. The court of appeals's incomplete analysis

In Garza's second ground of error on appeal, he urged the Texarkana Court of Appeals that the trial court erred in admitting a police officer's testimony referring to Garza's "violent history."[1] *Garza v. State*, No. 06-14-00054-CR, 2014 WL 5490947, at *4 (Tex. App.—Texarkana Oct. 30, 2014). The court of appeals noted that Garza had, indeed, "objected under Rules 401, 402, 403, and 404(b) and also asked for a mistrial," and that a "hearing was held outside the presence of the jury." *Id.* From the transcript of that hearing, though, the court determined that the "trial court denied Garza's objection under Rule 403 and denied his

---

[1] As the court of appeals rightly noted, though this point of error in Garza's brief was erroneously stylized as "the trial court erred in failing to give an instruction to disregard evidence of an extraneous assault," the substance of the argument raised a claim for erroneous admission of extraneous-offense evidence in violation of Rule 404(b) of the Texas Rules of Evidence. *See Garza*, 2014 WL 5490947 at *4 n. 2.

motion for mistrial, but never ruled on his objections under Rules 401, 402, or 404(b)." Pointing to this Court's 1979 opinion in *DeRusse v. State*, 579 S.W.2d 224, 235 (Tex. Crim. App. [Panel Op.] 1979), which held that a "complaining party must obtain an adverse ruling from the trial court" in order to preserve the issue for appeal, the court determined that Garza had thus failed to preserve the issue for review. *Garza*, 2014 WL 5490947 at *4.

## II.   For over 17 years, explicit rulings have not been required to preserve a complaint for appeal

To be sure, prior to the enactment of the "new" appellate rules, which became effective September 1, 1997, a party had to "obtain a ruling" or object to the court's refusal to rule in order to preserve error for appellate review. *See Frazier v. Yu*, 987 S.W.2d 607, 609–10 (Tex. App.—Fort Worth 1999, pet. denied) (comparing TEX. R. APP. P. 52(a) with TEX. R. APP. P. 33.1(a)(2)(A)). But revised rule 33.1(a)(2)(A), formerly rule 52(a), relaxes that requirement, and now, to preserve any error, the trial court must rule either expressly *or* implicitly on the objection, or refuse to rule with the complaining party objecting to the refusal. *See* TEX. R. APP. P. 33.1(a)(2)(A); *Frazier*, 987 S.W.2d at 609–10 (error preserved as long as record indicates in some way that trial court

10

ruled on objection either expressly or implicitly). Thus, "[i]n some instances, a party need not get an express ruling on an objection, motion, or request to preserve error." *State v. Kelley*, 20 S.W.3d 147, 153 n. 3 (Tex. App.—Texarkana 2000, no pet.). "Appellate courts will generally find that a trial court made an implicit ruling on an objection when the objection was brought to the trial court's attention and the trial court's subsequent action clearly addressed the complaint." *Id.*

Of course, an appellate court will not find that the trial court made an implicit ruling on an objection where the record does not reflect that the objection was ever brought to the trial court's attention. *Id*. But where an objection is made, and "the trial court [does] not expressly rule on the objection, [an appellate court] *must* determine whether the trial court implicitly ruled on the objection." *Pescaia v. State*, No. 06-04-00042-CR, 2004 WL 2359305, at *2 (Tex. App.—Texarkana 2004) (emphasis added) (citing *Kelley*, 20 S.W.3d at 153 n. 3).

This Court affirmed as much in *Gutierrez v. State*, 36 S.W.3d 509 (Tex. Crim. App. 2001). In that case, like this one, the court of appeals stated that in order to preserve an alleged error for appellate review

11

under Rule of Appellate Procedure 33.1, the record must reflect that the complaint was made to the trial court and that an adverse ruling was obtained. *Id.* at 510; *Garza*, 2014 WL 5490947 at \*4. And in that case, like this one, the court of appeals pointed to pre-1997 case law in support. *Gutierrez*, 36 S.W.3d at 510 (citing *Garcia v. State*, 887 S.W.2d 862, 871 (Tex. Crim. App. 1994)); *Garza*, 2014 WL 5490947 at \*4 (citing *DeRusse*, 579 S.W.2d at 235).

This Court swiftly and unanimously vacated the court of appeals's judgment and remanded the case to that court to consider whether the trial court had nonetheless implicitly ruled on the appellant's complaint. *Gutierrez*, 36 S.W.3d at 511. This Court noted "the obvious linguistic differences between Rule 33.1(a) and Rule 52(a)," the former "allow[ing] for a ruling by the trial court 'either expressly or impliedly' while Rule 52(a) simply required that the party obtain 'a ruling.'" *Id.* In only addressing whether "the trial court made an express ruling on appellant's motion," then, the court of appeals erred. *Id.*

III.  **There was, at the very least, a question of whether the trial court implicitly ruled on Garza's objection**

Unless the trial court here indisputably failed to rule on Garza's objection, then, the court of appeals was bound to consider whether he

12

did so implicitly before dismissing Garza's complaint as unpreserved. And here, the record is, at the very least, unclear.

At Garza's trial, the first-responding police officer testified that he did not make contact with Garza because of "his violent history." (RR6: 126). Trial counsel immediately objected under Texas Rule of Evidence 404(b) and "ask[ed] for a ruling." (RR6: 126). Thus began an extensive back-and-forth. First, the court suggested, "Well, why don't you withdraw your question or re-ask." (RR6: 126). Garza's counsel then requested, and received permission, to approach the bench. (RR6: 126). The jury was excused, and the following occurred:

| Court: | Do you have an objection? |
|---|---|
| Counsel: | Yeah. I do have an objection. Object to 404(b), 403, 402, 401. I ask the Court for a ruling on 404(b) first. |
| Court: | Well— |
| Counsel: | Violent history. This witness—and before the Court rules, let's make it very, very clear for the Fifth Court of Appeals.[2] This witness is a police officer. He knows better. He's a sergeant on top of that. He's testified before. I'm not going to ask him how many |

[2] The Texas Supreme Court ordered the appeal transferred from the Fifth Court of Appeals in order to balance the courts of appeals's dockets. *See* TEX. GOV'T CODE § 73.001.

13

times he's testified. But now—he's talked about a 2009, incident. Now, he's talked about the violent history, and he knows better, Judge.

He knows a lot better, and I don't think his captain would be too happy with the way he's come down here and messed this trial up.

Judge, now the jury has heard about a violent history, a 2009 incident, involving my client and Ms. Moore. This same jury—Judge, move for a mistrial. Grant me a mistrial.

Court:       Denied.

Counsel:     404(b). Okay. 404(b).

Court:       We're going to—

Counsel:     I ask for a ruling.

Court:       —finish this case.

(RR6: 127-28). The court then questioned whether the officer had said anything even potentially objectionable:

Court:       Nothing has come out that I can hear that he stated–

Counsel:     I heard it. I heard it. 402.

Court:       What did he say? What did he say that's—

14

Counsel:    Violent history. Based on his violent history. Based on his violent history. Trust me, [the court reporter] has got it. Go ahead, Counsel.

Prosecutor:    He did, Your Honor. He said based on his violent history.

Court:    Okay.

(RR6: 128-29). The court then asked the State if it had any response:

Prosecutor:    The State's response is: They have not been given the opportunity to clear up what the officer testified to.

Furthermore, the State's response will be that Defense counsel, himself, stated that his client is going to testify. And that is information that would come out that.

Counsel:    That is ridi—

Prosecutor:    In the voluntary manslaughter, would absolutely come out.

Counsel:    Not at this juncture, though, Judge.

Prosecutor:    And the State's—

Counsel:    Not at this juncture. That's crazy.

Prosecutor:    And the State's position is that they can remedy what the officer testified to and ask the Judge to ask the jury to disregard—

Court:    All right.

15

Prosecutor:     —what was said.

Court:          All right. And if you were to ask that, I might do that.

Prosecutor:     —and not go into it further.

Court:          All right.

Counsel:        How are they going to disregard that, Judge?

Court:          All right.

Counsel:        That's like having a naked woman run through your courtroom right now.

Court:          Okay.

Counsel:        Could you disregard that?

(RR6: 129-30). The court then instructed the bailiff to bring the jury in, and that "[i]f you want to make that—we'll sustain the objection." (RR6: 130). There is no indication to which objection the court referred, and counsel then asked:

Counsel:        You've overruled both of my objections on 404(b), correct? You've overruled those?

Court:          Well, I mean—

Counsel:        Motion for a mistrial. You heard that. Did you overrule it?

Court:          I denied the motion for a mistrial.

16

Counsel:          Okay. Object under 404(b) to the violent history by Sergeant Diaz.

Court:            I don't know that we got that much out of it, but—

Counsel:          We did. We did.

Court:            So—well, maybe you think so, but I—

Prosecutor:       If the State could be given an opportunity to remedy what was said by Sergeant Diaz—

Counsel:          Oh. No. No. No. If they get into that, we're going to object under 404(b) again.

Court:            Well, let's bring in the jury. And, you know, if you want to make all your objections in the record, that's fine, but we're going to move on with this case.

Counsel:          Sergeant, you need to stay away from that. Counsel, stay away from it. Don't make it worse. Let's move on. I'm with the Judge. I'm with Judge Adams.

Prosecutor:       I think I know how to do my job.

Counsel:          I know. I'm with Judge Adams, so let's move on.

Court:            Let's get this—let's get this case over with.

Counsel:          Let's get it going, get this train moving.

17

(RR6: 130-31). The jury then entered the courtroom, and the matter was not further addressed. (RR6: 131-32). The jury was not told to disregard the officer's testimony. (RR6: 132).

Even before the appellate rules' amendment in 1997, this Court recognized this scenario as one in which an implicit ruling was made. *See Rey v. State*, 897 S.W.2d 333, 336 (Tex. Crim. App. 1995) (defendant's motion "implicitly overruled" when he twice requested the court to make a ruling and then stated that the court had denied his motion and neither the court nor the State corrected that statement). And certainly, the courts of appeals have since recognized this scenario as one in which an implicit ruling was made. *See, e.g., Davis v. State*, 104 S.W.3d 177, 180 (Tex. App.—Waco 2003, no pet.) (implicit ruling found where appellant's counsel made an offer of proof, excepted to the court's "ruling," and neither the court nor the State contradicted or corrected counsel's statement); *Jones v. State*, 111 S.W.3d 600, 606 (Tex. App.—Dallas 2003, pet. ref'd) (admission of evidence objected to implicitly overrules the objection).

At the very least, there is a "question . . . whether the trial court's ruling was implicit." *Gutierrez*, 36 S.W.3d at 511. Accordingly, just as

18

this Court did in *Gutierrez*, Garza respectfully requests it to grant his petition so that it may vacate the judgment of the Texarkana Court of Appeals and then remand the case to that court to consider whether the trial court's ruling was implicitly made.

Respectfully submitted,


_____/s/ Bruce Anton_____
BRUCE ANTON
Bar Card No. 01274700
ba@sualaw.com


_____/s/ Brett Ordiway_____
BRETT ORDIWAY
Bar Card No. 24079086
bordiway@sualaw.com

SORRELS, UDASHEN & ANTON
2311 Cedar Springs Road Suite 250
Dallas, Texas 75201
(214)-468-8100 (office)
(214)-468-8104 (fax)

Attorneys for Appellant

## Certificate of Service

I, the undersigned, hereby certify that a true and correct copy of the foregoing Appellant's Petition for Discretionary Review was served via U.S. Mail to the Dallas County District Attorney's Office and the State Prosecuting Attorney on December 19, 2014.


　　　　　　　　　　　/s/ Bruce Anton
　　　　　　　　　　　BRUCE ANTON




## Certificate of Compliance

Pursuant to TEX. R. APP. P. 9.4(i)(3), undersigned counsel certifies that this brief complies with:

1.  the type-volume limitation of TEX. R. APP. P. 9.4(i)(2)(D) because this petition contains 1,971 words, excluding the parts of the brief exempted by TEX. R. APP. P. 9.4(i)(1).

2.  the typeface requirements of TEX. R. APP. P. 9.4(e) and the type style requirements of TEX. R. APP. P. 9.4(e) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2011 in 14-point Century Schoolbook.


　　　　　　　　　　　/s/ Bruce Anton
　　　　　　　　　　　BRUCE ANTON

# Appendix



# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-14-00054-CR

JUAN GARZA, JR., Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 2
Dallas County, Texas
Trial Court No. F-1230953-1

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

## MEMORANDUM OPINION

Juan Garza, Jr., was indicted in Dallas County, Texas,[1] for aggravated assault with a deadly weapon involving family or dating violence and was found guilty by a jury. He pled "true" to the enhancement allegation of a prior felony conviction, and after a punishment hearing to that same jury, the enhancement allegation was found true. Diaz was sentenced to thirty-five years' confinement and assessed a $10,000.00 fine.

On appeal, Garza argues that the trial court erred (1) by permitting testimony which Garza maintained was an assertion by another witness that the alleged victim's statements were truthful, (2) by failing to instruct the jury to disregard evidence of an extraneous offense, and (3) by admitting victim-impact testimony during the guilt/innocence phase of the trial.

By way of cross-appeal, the State asks this Court to modify the judgment so as to reflect the existence of the enhancement and the finding of family violence.

## I. Factual Background

On the morning of May 5, 2012, about 6:30 or 6:45 a.m., Richard Berna was in his yard preparing to hold a garage sale when he encountered a woman, later identified as Kelly Moore, walking down the sidewalk. The woman was dressed in a nightgown, was "visibly shaken up," and carried a small dog. Berna saw that Moore had bruising and swelling on her face and dried blood underneath her nose. When Berna approached Moore and asked if he could help her, she told him that she had been beaten up by her boyfriend (later identified as Garza) and that she had

---

[1]Originally appealed to the Fifth Court of Appeals in Dallas, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). We are unaware of any conflict between precedent of the Fifth Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

2

to wait until he fell asleep before she could leave the house and get help. Moore went on to relate to Berna that her assailant, Garza, "had a weapon."

Berna telephoned the emergency 9-1-1 number and twenty or thirty minutes later, Grand Prairie Police Officer Michael Diaz arrived on the scene. Diaz saw that Moore had marks on her face and chest, and he described her as "shaken," "very upset," and carrying a small dog. She told Diaz that at about 2:30 that morning, Garza had come home very angry and possibly intoxicated and that he had beaten her for hours. Moore related that during the course of the beating, Garza had pointed a gun at her and threatened to kill her. Because he believed Garza was then armed, Diaz did not immediately go to Garza's residence.

About a month later, on June 6, Garza was arrested and later indicted for aggravated assault with a deadly weapon involving family violence. Specifically, the indictment alleged that Garza had

> intentionally, knowingly and recklessly cause[d] bodily injury to KELLY MOORE, hereinafter called complainant, by STRIKING COMPLAINANT WITH A HAND AND HANDS AND BY GRABBING AND BY SQUEEZING COMPLAINANT'S NECK WITH A HAND AND HANDS, and said defendant did use and exhibit a deadly weapon, to-wit: a FIREARM, during the commission of the assault,
>
> and further, the said defendant has and has had a dating relationship with the said complainant and the said defendant was a member of the complainant's family and household . . . .

Garza's jury trial began December 3, 2013.

During the trial, Moore testified that she and Garza had dated intermittently for nine years. At the time of the incident, they were living together, and she even called him her spouse. She testified that at about 2:30 a.m. May 5, 2012, Garza came home intoxicated and seemingly

3

angry. He struck her in the temple with his hands and ordered her to give him the handgun she kept for protection. Garza then used the gun to add "extra weight" to his punches, before pointing it at her and threatening to kill her, then trying to suffocate her. The physically abusive conduct continued for "hours" until Garza fell asleep at about sunrise. When Garza fell asleep, Moore retrieved the small dog she was pet-sitting that night, left the residence, and began walking down the street.

Moore was taken to a hospital, where she was diagnosed with having suffered a concussion, two breaks in her nose, and damaged teeth. Later, at the direction of the police, Moore recorded a telephone conversation with Garza during which he asked her to drop the criminal charges. The telephone conversation was played for the jury.

Garza called no witnesses in his defense and rested, after which the jury found him guilty as charged. Garza pled true to the enhancement paragraph that alleged a prior felony conviction, and Garza and the State made their cases to the jury for punishment. The jury assessed Garza's punishment at thirty-five years' confinement and a $10,000.00 fine, and the trial court sentenced him accordingly. This appeal has ensued.

II.    **Analysis**

A.    **Testimony Regarding Truthfulness of Complainant**

In his first point of error, Garza contends that the trial court erred in admitting what Garza maintains was a statement by Berna that Moore was truthful in her statements to him.

We review the trial court's admission of evidence for an abuse of discretion. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006); *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex.

4

Crim. App. 2003); *Harris v. State*, 133 S.W.3d 760, 770 (Tex. App.—Texarkana 2004, pet. ref'd). An abuse of discretion occurs only when the trial court's decision "'was so clearly wrong as to lie outside that zone within which reasonable persons might disagree.'" *Harris*, 133 S.W.3d at 770–71 (quoting *Cantu v. State*, 842 S.W.2d 667, 682 (Tex. Crim. App. 1992)). We will uphold the trial court's ruling if it is reasonably supported by the record and is correct under any applicable legal theory. *Dixon*, 206 S.W.3d at 590.

Berna testified that Moore had told him that her boyfriend had beaten her up and that he had a gun. The State asked Berna, "What did you learn next, if anything?," and Berna testified that "[b]ased on what [he] could see, [he] believed that she was telling the truth." Garza objected under Rule 608 of the Texas Rules of Evidence, and the trial court overruled the objection. Garza moved for a mistrial, and the trial court overruled that as well. Berna testified that he then called 9-1-1, and his wife brought Moore into their home, offered her breakfast, coffee, "whatever [they] could give her at that time."

Nonexpert testimony may be offered to support the credibility of a witness in the form of opinion or reputation, but "the evidence may refer only to character for truthfulness or untruthfulness." TEX. R. EVID. 608(a)(1). A lay witness may not, under Rule 608, testify as to the complainant's truthfulness in the particular allegations. *See Schutz v. State*, 957 S.W.2d 52, 72 (Tex. Crim. App. 1997); *Fuller v. State*, 224 S.W.3d 823, 832–33 (Tex. App.—Texarkana 2007, no pet.). Further, evidence of truthful character may only be offered "after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise." TEX. R. EVID. 608(a)(2).

5

Here, Berna testified to Moore's truthfulness. The State contends that Berna's statement "was offered as an explanation as to why Berna helped Moore—a complete stranger—by calling 911 and inviting her into his home." However, the trial court could not have rested its ruling on Berna's statement to be an explanation for why he helped Moore because the trial court overruled Garza's objection before Berna testified to calling 9-1-1, helping Moore, or bringing her into his home. Therefore, we find the trial court erred in admitting the testimony.

The erroneous admission of evidence for the purpose of demonstrating the nature of a witness' character for truthfulness is nonconstitutional error. *Rhodes v. State*, 308 S.W.3d 6, 10 (Tex. App.—Eastland 2009, pet. dism'd, untimely filed). Thus, we disregard the error unless it affected appellant's substantial rights. *See* TEX. R. APP. P. 44.2(b). Substantial rights are not affected by the erroneous admission of evidence if, after reviewing the record as a whole, the appellate court has fair assurance that the error either did not influence or had only a slight effect on the finder of fact. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). In weighing harm, we consider everything in the record, including the evidence, the character of the alleged error and how it might be considered together with the other evidence in the case, the jury instructions, the State's theory, any defensive theories, closing arguments, voir dire, and whether the evidence of guilt is overwhelming. *Id*. at 355–58. In making that determination, this Court is not concerned with whether there was sufficient evidence on which Garza could have been convicted, but rather, whether there is a reasonable possibility the impermissible testimony might have contributed to the conviction. *Lopez v. State*, 288 S.W.3d 148, 178 (Tex. App.—Corpus Christi 2009, pet. ref'd).

Garza argues that Berna's testimony "essentially bolstered [Moore's] credibility," arguing further that to believe Berna's testimony was not harmful "strains credulity." Here, Garza's defensive theory was that although Moore did not lie about the fact that an assault occurred, she did lie regarding the seriousness of or the extent of the assault, arguing that "[s]omething happened, just not this, not to this magnitude . . . ." While Berna did testify to Moore's credibility, Moore had yet to testify, and Berna's testimony did not reference the extent of the assault. Later in the case, Moore herself testified regarding the assault's extent, duration, and results. Moore testified that Garza, with a gun in his hand, repeatedly struck her in the head and choked her. The jury saw photographs of Moore's injuries taken the morning after the assault as well as photographs taken a few days later. The medical records show that Moore suffered a concussion, and her nose was broken in two places. The jury also heard a recorded telephone conversation between Garza and Moore in which Garza stated he wanted her to be okay and he did not know what made him snap. During this conversation, when Moore told Garza that she thought he would kill her during the assault, he replied, "I know . . . . It was a bad deal." In addition to the recorded telephone call, there were several text messages from Garza to Moore introduced in which Garza was urging Moore to drop the charges and change her story. One of the text messages included the statement, "Your thing is in the trunk of your car." When the car trunk was searched, the police found the gun used by Garza in the assault. The State did not otherwise emphasize Berna's statement of his belief in the story told him by Moore.

We have a fair assurance that Berna's statement that he believed Moore to have been telling him the truth about the nature of the assault had either only a very slight influence or no

7

influence on the deliberations of the jury. Even ignoring Berna's statement entirely, there was ample evidence that confirmed for the jury the veracity of Moore's version of the assault. The error in allowing Berna's statement about the truthfulness of Moore's statement was harmless. Accordingly, we overrule this point of error.

## B. Evidence of Extraneous Offense

In his second point of error, Garza contends that the trial court erred by admitting Diaz' testimony regarding an extraneous offense committed by Garza.[2]

While Diaz was testifying regarding Moore's oral offense report, he stated that Moore had told him that Garza "[w]oke her up. And then started beating her as he was screaming at her about a 2009 case." Garza objected under Rules 401, 402, 403, and 404(b) of the Texas Rules of Evidence[3] and requested a mistrial. The trial court overruled his objections and denied his motion.

On appeal, Garza argues that Diaz' testimony regarding the 2009 case was inadmissible evidence of an extraneous offense under Rule 404(b) of the Texas Rules of Evidence. Extraneous offenses or bad acts are not admissible to prove the defendant acted in conformity with his criminal nature. TEX. R. EVID. 404(b); *Abdnor v. State*, 871 S.W.2d 726, 738 (Tex. Crim. App. 1994). The reference to a 2009 case is not testimony implicating Garza in an arrest,

---

[2]In Garza's brief, this point of error contends that the trial court erred by "failing to give an instruction to disregard evidence of an extraneous offense," but the substance of his argument raises a claim for erroneous admission of extraneous-offense evidence in violation of Rule 404(b) of the Texas Rules of Evidence.

[3]Rule 401 defines "relevant evidence," Rule 402 says generally that relevant evidence is usually admissible whereas irrelevant evidence usually is not, Rule 403 spells out some circumstances wherein some evidence (though relevant) should be barred, and Rule 404(b) provides that a person's prior bad conduct is not admissible for the purpose of showing that a person's later actions are made in conformity with that person's prior bad conduct.

crime, or bad act. There is nothing the jury heard to illustrate precisely what was meant by the reference to a "2009 case." Although that reference might have been to another crime of which Garza had been accused, it could just as easily have been a reference to a civil case or to a case involving only Moore. Under these circumstances, Diaz' reference to a 2009 case is a simple mystery, too vague to rise to the level of an extraneous bad act under Rule 404(b). Therefore, the testimony raises no issue for our review.

Later in Diaz' testimony, he was asked whether, after speaking to Moore at Berna's house, he went to Moore's home to speak with Garza. Diaz replied that he did not do so because of "his violent history, as she portrayed it to me -- ." As before, Garza objected under Rules 401, 402, 403, and 404(b) and also asked for a mistrial. A hearing was held outside the presence of the jury, during which Garza not only objected to the statement, he asked for a mistrial— skipping over a request for the intermediate relief of an instruction for the jury to disregard. The trial court denied Garza's objection under Rule 403 and denied his motion for mistrial, but never ruled on his objections under Rules 401, 402, or 404(b).

As a prerequisite to presenting a complaint for appellate review, an appellant must present to the trial court a timely request, objection, or motion stating the specific grounds for the desired ruling. TEX. R. APP. P. 33.1(a)(1)(A). The complaining party must obtain an adverse ruling from the trial court. *DeRusse v. State*, 579 S.W.2d 224, 235 (Tex. Crim. App. [Panel Op.] 1979). Finally, the point of error on appeal must correspond to the objection made at trial. *Dixon v. State*, 2 S.W.3d 263, 265 (Tex. Crim. App. 1998); *Thomas v. State*, 723 S.W.2d 696, 700 (Tex. Crim. App. 1986).

On appeal, Garza's argument is based upon Rule 404(b); however, regarding Diaz' reference to Garza's "violent history," Garza failed to obtain a ruling (adverse or otherwise) on his objection. Therefore, he failed to preserve this issue for our review. *See* TEX. R. APP. P. 33.1(a)(1)(A); *DeRusse*, 579 S.W.2d at 235.

### C. Victim Impact Evidence During Guilt/Innocence Phase of Trial

In his final point of error, Garza contends that the trial court erred by admitting victim-impact testimony during the guilt/innocence phase of the trial.

During the State's examination of Moore, the following exchange took place:

Q.    Okay. Tell me how this assault has affected your life.

[GARZA'S ATTORNEY]: Your Honor, this is improper at this point.

THE COURT: Well, why don't you rephrase your question.

Q.    (BY [THE STATE]) Have you had any physical consequences to the assault? Has there been -- the aftermath of your injuries?

[GARZA'S ATTORNEY]: Asked and answered, Judge.

THE COURT: Overruled.

A.    Yes. I -- I just don't have the memory and the -- some cognitive skills that I have lost.

[GARZA'S ATTORNEY]: Judge, this is all improper --

THE COURT: Overruled.

[GARZA'S ATTORNEY]: -- at this point. This is all improper. This is all --

A.    I lost my job and wages.

10

[GARZA'S ATTORNEY]: -- victim impact?

THE COURT: Overruled.

Q.   (BY [THE STATE]) When -- I'm sorry. We only need one person talking because the court reporter has to record things.

A.   I'm sorry.

Q.   Just let that person talk. And then the Judge will make a ruling, and then you can talk, okay?

A.   Okay.

Q.   So you said that you have -- you've lost some cognitive abilities and lost your memory. How about your teeth? Or did you have to have any surgery or repairing to your teeth or your nose?

A.   Yeah. I lost two months of work and had to have my dental work replaced and just scars from the inside.

Outside the context of homicide cases, victim-impact testimony is generally defined as evidence regarding the physical or psychological effects of a crime on victims themselves. *See Lane v. State*, 822 S.W.2d 35, 41 (Tex. Crim. App. 1991). Victim-impact evidence may include physical, psychological, or economic effects of crime on a victim or a victim's family. *Espinosa v. State*, 194 S.W.3d 703, 711 (Tex. App.—Houston [14th Dist.] 2006, no pet.). Although victim-impact testimony may be admissible during the punishment stage, such evidence is generally inadmissible during the guilt/innocence phase because it does not have the tendency to make more or less probable the existence of any fact of consequence with respect to guilt/innocence. *See Miller–El v. State*, 782 S.W.2d 892, 895 (Tex. Crim. App. 1990) (victim's testimony about future hardship as paraplegic was irrelevant on guilt issue and thus inadmissible over objection); *see also* TEX. R. EVID. 402 (evidence not relevant is inadmissible). Here, Moore

11

testified regarding the physical, psychological, and economic effects of the crime on her. Therefore, the testimony was very clearly victim-impact testimony in nature, and the trial court undoubtedly abused its discretion in allowing its admission at this stage of the proceedings.

Having found error, we must conduct a harm analysis to determine whether the error calls for reversal of the judgment. TEX. R. APP. P. 44.2. If the error is constitutional, we apply Rule 44.2(a) and reverse unless we determine beyond a reasonable doubt that the error did not contribute to appellant's conviction or punishment. TEX. R. APP. P. 44.2(a). Otherwise, we apply Rule 44.2(b) and disregard the error if it does not affect the appellant's substantial rights. TEX. R. APP. P. 44.2(b); *see Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998). Constitutional error is only present when a ruling is constitutionally required; mere misapplication of the rules of evidence is not constitutional error. *Alford v. State*, 22 S.W.3d 669, 673 (Tex. App.—Fort Worth 2000, pet. ref'd). Thus, erroneously admitted victim-impact evidence does not amount to constitutional error. *Karnes v. State*, 127 S.W.3d 184, 196 (Tex. App.—Fort Worth 2003, pet. ref'd); *Lindsay v. State*, 102 S.W.3d 223, 228 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd). We, therefore, consider whether the error affected Garza's substantial rights. TEX. R. APP. P. 44.2(b).

"A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). To determine whether the substantial rights of the appellant were affected, the appellate court should consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict,

12

the character of the alleged error, the arguments, and the voir dire. *Motilla v. State*, 78 S.W.3d 352, 355–58 (Tex. Crim. App. 2002). "A criminal conviction should not be overturned by the erroneous admission of evidence 'if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect.'" *Ex parte Henderson*, 384 S.W.3d 833, 860–61 (Tex. Crim. App. 2012) (quoting *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998)). The strength of the evidence of guilt, especially if it is overwhelming, is a factor to be considered. *Motilla*, 78 S.W.3d at 357–58. Whether the State emphasized the error can also be a factor in the appellate court's consideration. *Id*. at 356. If there are "grave doubts" about whether the error did not affect the outcome, then the error is treated as if it did affect the outcome. *Fowler v. State*, 958 S.W.2d 853, 865 (Tex. App.—Waco 1997), *aff'd*, 991 S.W.2d 258 (Tex. Crim. App. 1999).

After examining the record as a whole, we conclude that the admission of Moore's testimony about the ways that the incident has affected her life had only a slight effect, if any, on the jury during the guilt/innocence phase of the trial. The remainder of Moore's testimony, if believed by the jury, was sufficient to prove beyond a reasonable doubt that Garza had severely beaten Moore with his hands and with the pistol and, thus, committed the offense charged. The testimony of Berna and Diaz also supports conviction, as do the text messages from Garza, the recorded telephone conversation, and the medical records. The only reference the State made to the testimony during its closing argument was an oblique mention that Moore "was terrorized and still lives with that." The State did not otherwise emphasize the error. We cannot say that we are in "grave doubt" about whether the error affected the outcome, and we have a fair

13

assurance on this record that the error had little to no effect on the jury's guilty verdict. Given the strength of the evidence of guilt, we find the erroneous admission of the victim-impact testimony harmless. Accordingly, we overrule this point of error.

**D.      State's Cross-Appeal to Modify Findings in Judgment of Conviction**

As noted before, in its cross-appeal, the State asks this Court to modify the judgment so as to reflect Garza's plea of true to the enhancement, the jury's finding of true to the enhancement, and a finding of family violence.

The Texas Rules of Appellate Procedure give this Court authority to modify judgments and correct typographical errors to make the record speak the truth. TEX. R. APP. P. 43.2; *Bigley v. State*, 865 S.W.2d 26, 27 (Tex. Crim. App. 1993); *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992); *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd).

Here, the judgment lists "N/A" next to the spaces for "Plea to 1st Enhancement Paragraph" and "Findings on 1st Enhancement Paragraph." The record clearly reflects that Garza pled true to the enhancement alleged by the State. The jury found the enhancement true.

Article 42.013 of the Texas Code of Criminal Procedure provides that if the trial court "determines that the offense involved family violence, as defined by Section 71.004, Family Code, the court shall make an affirmative finding of that fact and enter the affirmative finding in the judgment of the case." TEX. CODE CRIM. PROC. ANN. art. 42.013 (West 2006); *Butler v. State*, 189 S.W.3d 299, 302 (Tex. Crim. App. 2006) ("[T]he trial court is statutorily obligated to enter an affirmative finding of family violence in its judgment, if during the guilt phase of trial, the court determines that the offense involved family violence as defined by TEX. FAM. CODE

14

ANN. § 71.004(1)."); *Thomas v. State*, 150 S.W.3d 887, 889 (Tex. App.—Dallas 2004, pet. ref'd) ("[T]he trial court had no discretion in entering a family violence finding once it determined the offense involved family violence."). "Family violence" includes "dating violence." TEX. FAM. CODE ANN. § 71.004(3) (West 2014). "Dating violence" includes an act that is "committed against a victim . . . with whom the actor has or has had a dating relationship" and that is intended to result in assault, or that "reasonably places the victim in fear of imminent physical harm, bodily injury, assault, or sexual assault." TEX. FAM. CODE ANN. § 71.0021(a)(1)(A), (a)(2) (West 2014).

The indictment and the jury charge each alleged that Garza presently or previously had a dating relationship with Moore and that Garza was a member of Moore's family or household. The application portion of the jury instructions instructed the jury, in pertinent part,

> Now, bearing in mind the foregoing instructions, if you unanimously find from the evidence beyond a reasonable doubt that on or about May 5, 2012, in Dallas County, Texas, the defendant, Juan Garza, Jr., did unlawfully then and there intentionally or knowingly or recklessly cause bodily injury to Kelly Moore, hereinafter called complainant, by striking complainant with hand or hands, and [Garza] did use or exhibit a deadly weapon, to-wit: a firearm during the commission of the assault,
> and you further find beyond a reasonable doubt that [Garza] has or has had a dating relationship with the said complainant or [Garza] was a member of the complainant's family or household, then you will find [Garza] guilty of aggravated assault as charged in the indictment.

The jury found Garza guilty as charged in the indictment; therefore, the jury found the allegation of family violence to be true.

Here, Moore gave undisputed testimony that she and Garza dated and lived together. Despite the evidence provided at trial and the jury's verdict, the judgment fails to include an affirmative finding of family violence.

Accordingly, we modify the judgment to include an affirmative finding of family violence and the prior felony enhancement and affirm the judgment, as modified.


Bailey C. Moseley
Justice

Date Submitted:    August 28, 2014
Date Decided:    October 30, 2014

Do Not Publish